690 A.2d 268

**COMMONWEALTH of Pennsylvania**

v.

**Robert P. ROOSE, Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 1996.

Filed Feb. 13, 1997.

John A. Knorr, Pittsburgh, for appellant.

Michael Streily, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CIRILLO, DEL SOLE and OLSZEWSKI, JJ.

DEL SOLE, Judge:

Appellant Robert P. Roose was convicted of driving under the influence and various summary traffic offenses. He was sentenced to a total of thirty to sixty days imprisonment, twenty-three months probation and $700.00 in fines. On appeal, Appellant contends that his arrest by a deputy constable was illegal because the deputy constable lacked the authority to arrest him for violations of the Motor Vehicle Code, the arrest was outside the deputy constable's jurisdiction, and the deputy constable lacked either reasonable suspicion or probable cause to stop him. We agree that deputy constables do not have the authority to arrest for violations of the Motor Vehicle Code and therefore we vacate the judgment of sentence and discharge Appellant.

On January 25, 1994, at 1:15 a.m., Deputy Constable Charles Schweinberg and Constable Elaine Caparelli were waiting at a traffic light when they observed Appellant's pickup truck pull into the oncoming traffic lane. When the light turned green, Appellant turned left and the two constables followed him. Appellant's truck twice hit a snow bank and then swerved in front of a bus. Deputy Constable

Schweinberg then activated a bubble light on his dashboard, a red and blue light located in the grille, and a siren. Appellant pulled over to the side of the road. Schweinberg asked Appellant for his registration, ordered him out of the vehicle and ultimately arrested him, handcuffed him and placed him in the back of the constable's car. City police were contacted and arrived approximately fifteen minutes later. The police administered field sobriety tests and an intoxilyzer, which measured Appellant's blood alcohol content at .092, less than the legal limit. Blood and urine samples tested at Central Medical Hospital tested at .103 and .139 respectively. Appellant was convicted after a nonjury trial.

Appellant first contends that constables and deputy constables in Pennsylvania do not have the authority to stop a motor vehicle and arrest the driver for violations of the Motor Vehicle Code. We agree.

Although no case deals with this precise situation, our supreme court has held that a deputy sheriff had the authority to stop a vehicle and arrest the driver for a Motor Vehicle Code violation which was a breach of the peace committed in the presence of the deputy sheriff. *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994). There are several important distinctions between constables and deputy constables and sheriffs and deputy sheriffs which dilutes the precedential value of *Leet*. A constable is elected within an electoral district, i.e., a ward, borough or the like. The elected constable, with the approval of the court, appoints deputy constables. 13 P.S. § 21. Constables and deputy constables are not employees of any municipal subdivision as police and sheriffs are. They are not paid a salary by any municipal subdivision but rather are independent contractors whose pay is on a per job basis. 13 P.S. §§ 63–75. As independent contractors, they are not acting for or under the control of the Commonwealth and cannot be considered Commonwealth employees in order to receive legal representation when sued in connection with their duties. *Rosenwald v. Barbieri*, 501 Pa. 563, 462 A.2d 644 (1983). No one supervises constables in the way a police chief supervises police officers or a sheriff supervises

deputies. No municipality is responsible for their actions in the way a city, borough, or township is responsible for its police or a county is responsible for its sheriff's office. In fact, our supreme court has found unconstitutional legislation which attempted to place constables under the supervisory authority of the courts. *In re Act 147 of 1990,* 528 Pa. 460, 598 A.2d 985 (1991).

These distinctions raise interesting questions both of authority and liability. For example, is a citizen required to stop when signaled to do so by a constable or deputy constable? The offense of fleeing or attempting to elude a police officer by its very terms is limited to police officers who are in a clearly identifiable police vehicle or, if the vehicle is unmarked, the officer must be in uniform and displaying a badge. 75 Pa.C.S. § 3733. Constables and deputy constables do not have uniforms and they are not provided with municipal vehicles but use their own private cars.[1] By what means does a constable or deputy constable signal a driver to stop? Under the Motor Vehicle Code, a constable's private automobile does not fit within the definition of an emergency vehicle, 75 Pa.C.S. § 102, and is not within that class of vehicles which may display flashing red or blue lights or use sirens.[2] 75 Pa.C.S. § 4571. If a constable or deputy constable violates someone's constitutional rights, is there "state action"? What if a constable or deputy constable is injured or killed while making a traffic stop? Since there is no employer, there would be no workers' compensation coverage, leaving the injured constable to pay any expenses.

1. We recognize that some constables have outfitted themselves in a "uniform" of their own choosing. However, inherent in the concept of a uniform is that all members of the particular organization, be it a police force or a Scout troop, are required by some higher authority to wear identical clothing. This is simply not possible with a constable who is an independent contractor and is not supervised by a higher authority in a particular organization.

2. It is interesting, to say the least, that Deputy Constable Schweinberg was himself in violation of the Motor Vehicle Code for using flashing lights and a siren on a vehicle which was not authorized as an emergency vehicle under the Code.

A more serious problem with motor vehicle stops is the possibility of pursuit. If the motorist refuses or fails to stop, will the constable feel compelled to instigate a chase which might endanger innocent bystanders? The General Assembly recently passed legislation requiring each municipal police department to establish policies and guidelines to be followed by officers when engaging in motor vehicle pursuits as defined by the Motor Vehicle Code. 75 Pa.C.S. § 6341 *et seq.* The policies must include criteria for deciding when to initiate a pursuit including the potential for harm to others, the seriousness of the offense, safety factors posing a risk to the general public, responsibilities of the various parties, including officers, supervisors and communications centers, pursuit tactics, roadblock usage, and communications during interjurisdictional pursuit. It is clear that these regulations contemplate that *only* properly trained and supervised police officers would be involved in such pursuits. This legislation evidences the legislature's intent to control high speed pursuits to provide for the safety of both the participants and the general public who may simply be in the path of the pursuit. Constables and deputy constables are not part of any municipal police force and are not supervised in the manner that this statute presumes. Yet if we grant constables and deputy constables a common law right to stop vehicles, doesn't this also include allowing them to pursue a fleeing vehicle or at least allow for the possibility that they will feel authorized to do so? Absent explicit statutory authority from the General Assembly, we hesitate to bestow such unbridled power on someone who is, as discussed below, not trained to handle such a situation.

Training for police officers and constables is also vastly different. Constables and deputy constables are required to have only 80 hours of basic training, some of which is devoted to the interpretation and application of the fee schedule. 42 Pa.C.S. § 2945. Conspicuously absent from the curriculum of the basic training course is enforcement of the Motor Vehicle Code.[3] Police officers are required to take a course of 520

3. The basic training course consists of the following topics: role of the constable in the justice system, professional development, civil law and

hours of study, 40 hours of which are devoted to the Motor Vehicle Code. 37 Pa.Code § 201.21. Also mandatory for police officers are minimum physical fitness standards, psychological evaluations and background investigations to determine suitability for employment as a police officer. 53 P.S. § 744. This training must be satisfactorily completed prior to actually enforcing criminal laws and moving traffic violations. 53 P.S. § 748. The definition of police officer in the training act notably includes deputy sheriffs of second class counties and housing authority police of first class cities but does not include constables or deputy constables, thus these requirements do not apply to constables or deputy constables. Deputy sheriffs of second class counties who have successfully completed this training are included in the definition of "police officer" in the Crimes Code. 18 Pa.C.S. § 103. Neither constables nor deputy constables are, however, included in this definition.

Our decision in *Commonwealth v. Taylor*, 450 Pa.Super. 583, 677 A.2d 846 (1996), is factually distinguishable. In *Taylor*, this court upheld a constable's warrantless arrest for a felony violation of the drug laws which was committed in the constable's presence, an arrest that a private citizen could effect. It is important that we recognize that a motor vehicle stop is vastly different from a situation like *Taylor* where the constable merely walked into the house and observed drugs. A vehicle stop involves a seizure with all the constitutional implications. Any time a vehicle is stopped, there is the possibility of danger to other motorists and innocent bystanders as well as the driver and the person stopping the vehicle. In the present case, for example, Appellant was stopped after proceeding through a busy intersection and on a street which was traversed by a Port Authority bus. It was January and there were snow banks along the sides of the road. Furthermore, both *Leet* and *Taylor* recognized the need for appropriate training and remanded to the trial court to determine if

process, criminal law and process, use of force, mechanics of arrest, defensive tactics, prisoner transport and custody, court security, and crisis intervention. *Constables' Training Bulletin*, No. 13, August 1996.

the constable involved had adequate training.[4] That training would include the training necessary to recognize the signs of intoxication and/or perform field sobriety tests. Police officers are trained in these procedures. Constables are not.

The Commonwealth's reliance on 13 P.S. § 45 is similarly unavailing. This section applies only to constables "of the several *boroughs* " of the Commonwealth. Presently, the deputy constables involved are not constables of a borough but of wards of the City of Pittsburgh. Although discussion of the common law authority of constables is historically interesting, it is of no legal significance. Since the 19th century the Legislature has defined the duties of the office of constable by statute, even eliminating this office in the city of Philadelphia. Thus, we conclude, given this legislative regulation, that constables possess no common law police or peace officer powers but can only exercise the authority granted by statute.

It would set a dangerous precedent to allocate to constables the same police powers which highly trained police officers and deputy sheriffs have. The Legislature has clearly set forth minimum training and other requirements for police officers which are not required of constables. Enforcement of the Motor Vehicle and Crimes Codes and the serious responsibilities and challenges which it entails should not be delegated to those neither trained nor supervised for such work.

We find therefore that Appellant's arrest was invalid because the deputy constable did not have the authority to arrest him for violating the Motor Vehicle Code. We therefore vacate the judgment of sentence, reverse the conviction and discharge Appellant.

CIRILLO, J., files a dissenting opinion.

CIRILLO, President Judge Emeritus, dissenting opinion:

While I share my colleagues' concern that a heightened status bestowed upon a constable could potentially establish

---

4. We believe that only certification under the Municipal Police Officers Education and Training Act, 53 P.S. § 740 *et seq.* is sufficient to comply with this requirement of *Leet.*

an imprudent precedent, I cannot so easily dismiss the powers possessed by constables at common law and the pertinent Pennsylvania appellate opinions distinguished by the majority, namely, *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994) and *Commonwealth v. Taylor,* 450 Pa.Super. 583, 677 A.2d 846 (1996). Accordingly, I respectfully dissent.

While there exists no authority specifically governing a constable's arrest power pursuant to the Motor Vehicle Code, it is beyond cavil that, historically, constables have been entrusted with a general power to arrest, with or without a warrant.

> The office of constable is ancient, his duties important and powers large. His general duty is to keep the peace; and for this purpose he may arrest, imprison, break open doors, and the like.... He may arrest for a breach of the peace in his presence, and deposit the prisoner in jail, and the jailer is bound to receive him.... Those are all common-law powers[.]

*McCullough v. The Commonwealth,* 67 Pa. 30, 32 (1870) (citations omitted).[1]

Recently, in an issue of first impression, this court was asked to decide whether constables are lawfully empowered to make warrantless arrests for a violation of the drug laws. *See Commonwealth v. Taylor,* 450 Pa.Super. 583, 677 A.2d 846 (1996). In *Taylor,* Constable Daniel M. Certo went to Taylor's apartment in order to evict him. While Taylor was packing his belongings, the constable noticed Taylor place a plastic bag containing smaller bags of a white substance in his pocket. The substance was later identified as crack cocaine.

---

**1.** The duties of a constable have also been statutorily recognized:

> The policemen and constables of the several boroughs of this [C]ommonwealth, in addition to the powers already conferred upon them, shall and may, without warrant and upon view, arrest and commit for hearing any and all persons guilty of a breach of the peace, vagrancy, riotous or disorderly conduct or drunkenness, or may be engaged in the commission of any unlawful act tending to imperil the personal security or endanger the property of the citizens, or violating any ordinances of said borough, for the violation of which a fine or penalty is imposed.

13 P.S. § 45 (Act of June 4, 1987, P.L. 121, § 1).

Additionally, the constable observed Taylor remove a large sum of prepackaged money from beneath his bed. Constable Certo arrested Taylor and conducted a search of his person. Taylor was charged with possession of a controlled substance and possession with intent to deliver; his subsequent motion to suppress was granted, and the Commonwealth appealed.

In determining whether the constable possessed the power to make a warrantless drug search, the *Taylor* court first examined two Pennsylvania Supreme Court cases which, while not on point, provided guidance on the subject. In *In re Act 147 of 1990*, 528 Pa. 460, 598 A.2d 985 (1991), the court was asked to rule upon the constitutionality and validity of Act 147, which provided for the supervision, training, and certification of constables engaged in judicial duties. The court concluded that since constables could not be brought under the umbrella of the judicial system, the Act was unconstitutional and invalid. While the holding of *In re Act 147* did not deal specifically with the constables' arrest powers, it provided a telling description of a constable's functions. In particular, the court expressly recognized that "a constable is a peace officer." [2] *Id.* at 470, 598 A.2d at 990. The court further stated:

A constable is a known officer charged with conservation of the peace, and whose business it is to arrest those who have

**2.** A peace officer is defined as:

Any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses, or any person on active State duty pursuant to section 311 of the act of May 27, 1949 (P.L.1903, No. 596), known as "The Military Code of 1949." The term "peace officer" shall also include any member of any park police department of any county of the third class.

18 Pa.C.S.A. § 501 (footnote omitted).

In a footnote to the statement that a constable is a peace officer, the *In Re Act 147* court expressly noted: "The constable is a police officer." *In Re Act 147* 528 Pa. at 471 n. 3, 598 A.2d at 990 n. 3. The *Taylor* court rejected the claim that this statement recognized that constables possess the same authorities and duties as police officers. Rather, "when read in the context in which it was uttered, the court's statement indicates that the powers of constables and police officers are coextensive in matters relating to 'conservation of the peace.'" *Taylor*, 450 Pa.Super. at 587 n.6, 677 A.2d at 848 n.6.

violated it. *Commonwealth v. Deacon,* 8 Serg. & R. 47, 49 (1822). By statute in Pennsylvania, a constable may also serve process in some instances. See generally, 13 P.S. §§ 41–46. . . . As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though his job is obviously related to the courts. It is the constable's job to enforce the law and carry it out, just as the same is the job of district attorneys, sheriffs, and the police generally.

*In re Act 147,* 528 Pa. at 470, 598 A.2d at 990 (emphasis added).

In *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994), the issue, nearly identical to the one at hand, was whether a deputy sheriff was authorized in Pennsylvania to make a warrantless arrest for motor vehicle violations committed in his presence. Defendant Leet had passed a line of traffic stopped in a no-passing zone. Sheriff Gibbons directed Leet to pull off the road, approached the car, and noticed an open beer can on the front seat. When Gibbons asked Leet for his vehicle papers, he discovered that Leet had no driver's license and, upon further investigation, discovered that Leet's license had been suspended. Officer Donald Webber subsequently arrived and issued citations for Leet's summary traffic offenses.[3] The court expressly held that the common law powers of the sheriff "include the power to enforce the [M]otor [V]ehicle [C]ode, and that such powers have not been abrogated by statute or otherwise." *Id.* at 93, 641 A.2d at 301. The court made its determination after an exhaustive review of the powers possessed by sheriffs at common law. Following this review the court stated:

Unless the sheriff's common law power to make warrantless arrests for breaches of the peace committed in his presence has been abrogated, it is clear that a sheriff (and his deputies) may make arrests for motor vehicle violations which amount to breaches of the peace committed in their

---

**3.** Leet was charged with the additional offenses of unlawful possession of a controlled substance and possession with intent to deliver a controlled substance after Sheriff Gibbons discovered drugs in his car.

presence.... It is evident, moreover, that the power to arrest subsumes the power to stop, detain, and investigate a motorist who breaches the peace while operating a motor vehicle in the presence of the sheriff.

In short, it is not necessary to find a [M]otor [V]ehicle [C]ode provision granting to sheriffs the power to enforce the code—sheriffs have had the power and duty to enforce the laws since before the Magna Carta; rather, it would be necessary to find an unequivocal provision in the code abrogating the sheriff's power in order to conclude that the sheriff may not enforce the code.

*Id.* at 96, 641 A.2d at 303 (footnote omitted). As enunciated in *Taylor*, "*Leet* stands for the proposition that in determining the authority of peace officers we must consider not only statutory powers but also any common law powers which preexisted and exceed those statutory powers." *Taylor*, 450 Pa.Super. at 589, 677 A.2d at 849.

Following its discussion of *In Re Act 147* and *Leet*, this court embarked upon a historical analysis of the power of the constable.[4] The court's extensive review of authority supported the proposition that constables "possessed the power at common law to make warrantless arrests for felonies and breaches of the peace." *Taylor*, 450 Pa.Super. at 593–94, 677 A.2d at 851.[5] In reaching this conclusion, we acknowledged the general rule that:

A peace officer may, without a warrant, arrest for a felony or for a misdemeanor committed in his presence although the right to arrest for a misdemeanor, unless conferred by

4. The *Taylor* court initially noted that a constable "is not of the same grade and dignity as that attributed to the common law sheriff" and, further, that the "constable's powers are less and his jurisdiction smaller than those of a sheriff." *Taylor*, 450 Pa.Super. at 590–91, 677 A.2d at 850. The fact that *Taylor* recognized that constables were less powerful than sheriffs did not, however, end the *Taylor* court's analysis.

5. In support of its decision, the *Taylor* court explored authorities such as: Blackstone, *Commentaries on the Laws of England* (Callaghan & Co., 1899), Joan R. Kent *The English Village Constable*, 1580–1642 (Oxford 1986), and contemporary treatises.

statute, is restricted to misdemeanors amounting to a breach of the peace.

*Id.* (quoting *Commonwealth v. Pincavitch,* 206 Pa.Super. 539, 544, 214 A.2d 280, 282 (1965) (citation omitted)). The *Taylor* court specifically condensed its holding as follows:

> **In summary, we hold that constables possess the common law powers to conduct warrantless arrests for felonies and breaches of the peace.** Since those powers have not been abrogated by our statutory law, they are retained by the constables of this Commonwealth. *Leet, supra.* Thus, constables currently possess the power to make warrantless arrests for felony violations of the drug laws.

*Taylor,* 450 Pa.Super. at 596, 677 A.2d at 852 (emphasis added).

In the instant case, Roose confines his first issue to whether the deputy constable lacked authority to arrest him for violations of the Motor Vehicle Code.[6] To summarize the important existing law on this subject, *Taylor* expressly provides that a constable possesses the power to make warrantless arrests for felonies or breaches of the peace. *See* 13 P.S. § 45. The Supreme Court in *Leet* clearly implied that violations of the Motor Vehicle Code are breaches of the peace. As stated previously, *Leet* ruled that "it is clear that a sheriff (and his deputies) may make arrests for motor vehicle violations which amount to breaches of the peace committed in their presence." [7] *Leet,* 537 Pa. at 96, 641 A.2d at 303. It appears, then, under current case law, that a constable may arrest for breaches of the peace, *Taylor, supra,* which include motor vehicle violations. *Leet, supra.*

**6.** While it was not specified which offenses precipitated the arrest, an examination of the preliminary hearing record reflects that, on cross-examination, Constable Schweinberg testified that he told Roose "he was under arrest for driving without a driver's license, no insurance card, no owner's card, and reckless driving.... And I told him that he may be—it's possible that he could be facing charges of DUI."

**7.** The offenses in *Leet* included driving with a suspended license, 75 Pa.C.S. § 1501; driving with an open can of beer, 75 Pa.C.S. § 3715; and passing in a no passing zone, 75 Pa.C.S. § 3307. Implicit in *Leet's* ruling is that the foregoing offenses constitute breaches of the peace.

250

Based upon my interpretation of the prevailing precedent, I am obliged to follow such precepts; I, therefore, must disagree with the majority's conclusion that constables do not possess the authority to make arrests for Motor Vehicle Code violations.[8]

---

**8.** Despite the holdings in *Leet* and *Taylor*, both cases were remanded for a determination of whether the sheriff/constable was adequately trained for addressing the violations at issue. The *Leet* Court stated:

> Policemen, to whom the legislature has given primary responsibility for enforcement of the motor vehicle code, are required by statute to undergo formal training prior to enforcing the law. We deem this requirement to apply equally to sheriffs who enforce motor vehicle laws. Thus a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth.

*Leet*, 537 Pa. at 97, 641 A.2d at 303 (footnotes omitted). Constable Shweinberg, the only arresting constable in the present case, testified that he received approximately 88 hours of training in constables' duties, including law enforcement, at the Community College of Allegheny County (CCAC) and other locations. His training included criminal law, weapons training, and defense tactics. The guidance given by *Leet* with regard to required training is not specific. In discussing the training requirements, *Leet*, in a footnote, makes reference to the Municipal Police Jurisdiction Act, 42 Pa.C.S. § 8951 *et seq.*, and the Municipal Police Officers' Education and Training Act, 53 P.S. § 741. Section 8954 of the Municipal Police Jurisdiction Act makes reference to mandatory certification requirements, but does not expound upon such requirements. Generally, 53 P.S. § 741 sets forth the powers and duties of the Municipal Police Officers, Education and Training Commission, one of them which is "[t]o require every police officer to attend a minimum number of hours of in-service training as provided for by regulation. . . ." 53 P.S. § 744(7). It is not clear from the record whether Constable Schweinberg's training constitutes that required of police officers throughout the Commonwealth. *Leet, supra.* Because it is difficult to determine whether Constable Schweinberg's formal training was in compliance with the appropriate regulations, I would remand to the trial court so than a complete record may be made.