Cynthia Ann KLINE

v.

COMMONWEALTH of Pennsylvania, DE-
PARTMENT OF TRANSPORTATION,
BUREAU OF DRIVER LICENSING,
Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 1997.

Decided Feb. 6, 1998.

Timothy P. Wile, Asst. Counsel In-Charge,
and Harold H. Cramer, Asst. Chief Counsel,
Harrisburg, for appellant.

Craig P. Miller, Lock Haven, for appellee.

Before COLINS, President Judge,
FRIEDMAN, J., and RODGERS, Senior
Judge.

RODGERS, Senior Judge.

The Pennsylvania Department of Trans-
portation, Bureau of Driver Licensing, (De-
partment) appeals from the May 29, 1997
order of the Court of Common Pleas of Clin-
ton County (trial court) sustaining the statu-
tory appeal of Cynthia Ann Kline (Licensee)
from a one-year suspension of her operating
privilege. We affirm.

The underlying facts are not in dispute.
On May 18–19, 1996, the Clinton County
Sheriff's Department, with assistance from
five area municipal police departments, con-
ducted a sobriety checkpoint on State Route
150 in Beech Creek Township, Clinton Coun-
ty, Pennsylvania. At approximately 2:00
a.m., Licensee's vehicle was stopped by Clin-

ton County Deputy Sheriff James Worden. Upon speaking to Licensee, Deputy Worden detected an odor of alcohol and asked Licensee if she would submit to field sobriety tests. Licensee agreed and was directed to Clinton County Deputy Sheriff Michael J. Johnstonbaugh, who administered the tests. After Licensee failed the field sobriety tests, Deputy Johnstonbaugh arrested her for driving under the influence of alcohol (DUI), in violation of Section 3731(a) of the Vehicle Code, 75 Pa.C.S. § 3731(a). Deputy Johnstonbaugh then requested Licensee to submit to a blood alcohol test, but she refused.

Deputy Johnstonbaugh filed criminal charges against Licensee and, as a result of her refusal to submit to the chemical test, the Department imposed a one-year suspension of her operating privilege.[1] On July 30, 1996, Licensee filed a statutory appeal to the trial court. Among the arguments Licensee raised on appeal was that Deputy Johnstonbaugh lacked authority to enforce Section 1547 of the Vehicle Code.

 In order to sustain a license suspension under Section 1547(b) of the Vehicle Code, the Department must prove that the licensee: 1) was arrested for DUI; 2) was asked to submit to a chemical test; 3) refused to do so; and 4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Where a licensee challenges the legal authority of the arresting officer, the Department bears the burden of proving that the officer has legal authority to make the arrest. *Snyder v. Commonwealth*, 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994). Unless the Department establishes that the arresting officer has such authority, this Court shall reverse the suspension. *Id.*

By agreement of the parties, confirmed by the trial court's order of September 4, 1996, the only issue to be addressed by the trial court was the legality of the arrest. The trial court held de novo hearings en banc on November 14, 1996 and May 19, 1997.[2]

The Department's witnesses testified regarding the formal training received by Deputy Johnstonbaugh. The Department argued that this training was sufficient, under the Supreme Court's decision in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), to authorize Deputy Johnstonbaugh to enforce the Vehicle Code. Licensee maintained that completion of training as governed by the Municipal Police Officers Training Act (Act 120)[3] was required in order for authority to enforce the Vehicle Code to be conferred upon an officer. Relying on *Commonwealth v. Roose*, 456 Pa.Super. 238, 690 A.2d 268 (1997), the trial court agreed. Because Deputy Johnstonbaugh had not completed Act 120 training, the trial court held that he did not have the authority to arrest Licensee and sustained her appeal.[4]

On appeal, the Department argues that Deputy Johnstonbaugh's training, which in-

---

1. Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, provides in part that any person operating a motor vehicle shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if the police officer has reasonable grounds to believe that the person was operating the motor vehicle while under the influence of alcohol or a controlled substance. Section 1547(b)(1) provides that if any person placed under arrest for DUI is requested to submit to a chemical test and refuses to do so, the Department shall suspend the person's operating privilege for a period of 12 months.

2. During the hearings, the trial court was also sitting as a criminal court. On October 4, 1996, Licensee filed an omnibus pre-trial motion to suppress evidence, at No. 270–96 Criminal Division, also alleging, *inter alia*, that Deputy Johnstonbaugh lacked authority to make the arrest. Due to the identity of the issues involved, the trial court scheduled hearing on that motion in conjunction with hearings on the civil appeal.

3. Act of June 18, 1974, P.L. 359, 53 P.S. §§ 740 – 749.1. During the course of the hearings, the provisions of Act 120 were repealed and replaced by the Act of December 19, 1996, P.L. 1158. Similar provisions are now found at 53 Pa.C.S. §§ 2161—2171. For the sake of clarity, we refer to these new provisions as Act 120.

4. In its order of May 29, 1997, the trial court also granted Licensee's motion to suppress, but only that portion of the trial court's order sustaining Licensee's license suspension appeal is before this Court.

cludes specific courses in field sobriety testing, accident investigation, DUI and the Vehicle Code, satisfies the sufficient prior training requirement set forth in *Leet.*[5]

In *Leet*, the Supreme Court held that the common law powers of sheriffs and deputy sheriffs include the power to enforce the Vehicle Code. The *Leet* court further stated that public safety considerations dictate that those who enforce the laws with firearms be required to undergo appropriate training. Noting that police officers are required by statute to undergo formal training prior to enforcing the law, the *Leet* court held that the statutory requirement of prior formal training applies equally to sheriffs who enforce motor vehicle laws. More specifically, the *Leet* court held that a sheriff or deputy sheriff must complete "the same type of training that is required of police officers throughout this Commonwealth." *Id.* 641 A.2d at 303. Finding the record incomplete, the *Leet* court remanded for findings as to whether the deputy sheriff in that case had completed appropriate training.

Formal training for municipal police officers is governed by statute, and the minimum curriculum requirements are set forth at 37 Pa.Code § 203.51. Presently, the basic training curriculum consists of 520 hours of instruction. The record reflects that municipal police officers receive the following instruction: law enforcement orientation (44 hours); professional development (81 hours); law (98 hours); motor vehicle code (30 hours); patrol procedures and operation (40 hours); investigations (41 hours); communications (30 hours); handling violent or dangerous people (13 hours); custody (20 hours); first aid and CPR (45 hours); firearms (52 hours); and operation of patrol vehicles (26 hours). (Commonwealth Exhibit 17.)

The primary duties of a sheriff's department are criminal and civil process, court-room security and transportation of prisoners.[6] The legislature has limited the basic training provided for deputy sheriffs to 160 hours of instruction.[7] Courses of instruction include: criminal justice, history of the sheriff's role and powers and duties of the sheriff (7 hours); Pennsylvania courts (4 hours); civil procedure (30 hours); crimes code, criminal procedure and evidence (18 hours); courtroom security (6.5 hours); prisoner transportation (6.5 hours); first aid (17 hours); crisis intervention (10 hours); firearms (24 hours); self-defense, defense tactics, mechanics of arrest and physical conditioning (27 hours); and communications and professional development (10 hours). (Commonwealth Exhibit 17.)

This curriculum does not include instruction in DUI or Vehicle Code enforcement. However, the Pennsylvania Sheriff's Association sponsors an educational program that utilizes Act 120 curriculum to provide training in DUI, Vehicle Code enforcement and accident investigation for deputy sheriffs. Witnesses for the Department testified that the lesson plans for the vehicle code and DUI instruction were identical to those used for Act 120 courses and that the examinations and passing criteria were also the same.

In addition to his basic training, Deputy Johnstonbaugh received a certificate from the Lackawanna Junior College Police Academy on April 30, 1995, reflecting that he successfully completed 32 hours of instruction in motor vehicle codes, 8 hours of instruction in accident investigation and 5 hours of instruction in DUI. In 1994, he successfully completed a 4–day course of instruction in standardized field sobriety testing procedures provided by the Pennsylvania Department of Education.

▮ The Department maintains that *Leet* only requires that deputy sheriffs complete

---

**5.** The Department also argues that Licensee was initially "arrested", within the meaning of Section 1547 of the Vehicle Code, by Deputy Worden when he stopped her vehicle, asked for her license and registration, and requested that she submit to field sobriety tests. As the Department did not raise this issue to the trial court, it is waived on appeal. Pa. R.A.P. 302.

**6.** Testimony of Steven C. Spangenberg, Manager of the Civil and Criminal Training Division of the Pennsylvania Commission on Crime and Delinquency. N.T. May 19, 1997, p. 12.

**7.** Section 5 of the Deputy Sheriffs' Education and Training Act, Act of February 9, 1984, P.L. 3, *as amended*, 71 P.S. § 2105. The basic training course curriculum is set forth at 37 Pa.Code § 421.11.

the "same type of training" as municipal police officers and that the training received by Deputy Johnstonbaugh is adequate under *Leet* to provide him authority to enforce the Vehicle Code. We disagree.

In *Roose*, the Superior Court held that training received by constables and deputy constables is not adequate to confer upon them the authority to enforce the Vehicle Code. The *Roose* court compared the 80 hours of training received by constables and deputy constables to the more extensive training received by municipal police officers. The court focused on the potential hazards associated with a vehicle stop and discussed one example:

> A more serious problem with motor vehicle stops is the possibility of pursuit. If the motorist refuses or fails to stop, will the constable feel compelled to instigate a chase which might endanger innocent bystanders? The General Assembly recently passed legislation requiring each municipal police department to establish policies and guidelines to be followed by officers when engaging in motor vehicle pursuits as defined by the Motor Vehicle Code. [Citation omitted]. The policies must include criteria for deciding when to initiate a pursuit including the potential for harm to others, the seriousness of the offense, safety factors posing a risk to the general public, responsibilities of the various parties, ... pursuit tactics, roadblock usage, and communications during interjurisdictional pursuits. It is clear that these regulations contemplate that **only** properly trained and supervised police officers would be involved in such pursuits. This legislation evidences the legislature's intent to control high speed pursuits to provide for the safety of both the participants and the general public who may simply be in the path of the pursuit.

*Id.* 690 A.2d at 270 (emphasis in original). Concluding that enforcement of the Vehicle Code entails serious responsibilities and challenges, the *Roose* court opined that only certification under Act 120 is sufficient to comply with the requirement of *Leet*. *Roose*, 690 A.2d at 271, n. 4.

The Department asserts that the present case is distinguishable from *Roose*. The Department points out that, unlike the constable in *Roose*, Deputy Johnstonbaugh has received the same type of training with respect to roadblocks, indicia of intoxication, field sobriety testing, and Vehicle Code enforcement as police cadets receive under Act 120. The Department further argues that the opinions expressed in *Roose* are merely non-binding dicta.

We recognize that some of the additional courses taken by Deputy Johnstonbaugh were identical to those offered to police cadets. Nevertheless, we agree with the trial court's conclusion that he received only **part** of "the same type of training" required of police officers as contemplated by the court in *Leet*.

■ In *Leet*, the court held that the common law powers of sheriffs and deputy sheriffs include the authority to enforce the Vehicle Code, even though no provision of the code grants them such power. The *Leet* court next focused on the need to protect public safety.[8] Mindful of this need, we must consider that every vehicle stop involves the potential for a myriad of hazardous encounters. An officer may discover the presence of illegal drugs or weapons, that the vehicle is stolen or that the operator is a wanted felon. Unfortunately, the potential risks associated with a vehicle stop are well known. Our awareness of the realities of modern day life compels the conclusion that those who enforce the law with firearms must receive comprehensive formal training before they may be clothed with such authority. Thus, we hold that successful completion of the entire course of instruction formerly known

---

8. Where the legislature has expressly granted officers enforcement powers under the Vehicle Code, it has also required that they successfully complete Act 120 instruction. *See* Section 3303 of the Railroad and Street Railway Police Act, 22 Pa.C.S. § 3303.

as Act 120 instruction is required in order for an officer to have the authority to enforce the Vehicle Code.

Accordingly, we affirm the trial court's order.

*ORDER*

NOW, February 6, 1998, the order of the Court of Common Pleas of Clinton County, dated May 29, 1997, is affirmed.