**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Brian S. HIMES, Appellee.**

Superior Court of Pennsylvania.

Argued June 24, 1998.

Filed Aug. 6, 1998.

Vincent P. Nudi, Asst. District Atty., Erie, for Com., appellant.

Peter J. Sala, Erie, for appellee.

Before KELLY, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge:

In this appeal, we address the authority of Waterways Conservation Officers, (WCOs), to enforce provisions of the Motor Vehicle Code (Code). Though WCOs are authorized by statute to stop and arrest for any violation of law classified as a felony or misdemeanor, we conclude that they may not conduct stops for violations of the Motor Vehicle Code unless they have completed the entire course of instruction specified at 37 Pa.Code § 203.51. Because we find that the WCO in question here had not completed such training when he effected a traffic stop of Appellee, we affirm the trial court's order suppressing evidence obtained at the stop and subsequent arrest.

On June 21, 1997, WCO John W. Bowser, an officer of the Pennsylvania Fish and Boat Commission, conducted an investigative stop of Brian S. Himes, on the belief that Himes was driving under the influence (DUI). Bowser initially observed Himes sitting in his vehicle at 3:00 a.m., parked on a beachside road in Presque Isle State Park. Bowser approached the vehicle and asked Himes if he needed assistance, to which Himes replied that he was contemplating a swim in the lake. Because the park was then closed, Bowser directed Himes to leave, and as Himes drove out over a park access road, Bowser followed him. During the ensuing sequence of events, Bowser observed Himes' vehicle swerve outside its lane of travel, execute erratic lane changes unaccompanied by appropriate signals, and once, strike a cement lane divider. Bowser, who was not in uniform, radioed fellow WCO, Robert Nestor, and stated that he believed Himes was DUI and asked that Nestor assist him. When Nestor's vehicle appeared, Bowser activated his emergency beacon light and directed Himes to pull over on Sixth Street in Millcreek Township. At Bowser's direction, Nestor approached Himes' vehicle and directed Himes to pull into a nearby parking lot. The officers observed that Himes smelled of alcohol and that his eyes were glassy and blood-

shot. They also observed what appeared to be a bag containing beer inside Himes' vehicle.

Consequently, Officer Nestor contacted the Millcreek Township Police Department, and Millcreek police officer Rick Emerick was dispatched to the scene. Upon arrival, Emerick observed that Himes exhibited symptoms of intoxication and administered three field sobriety tests. Because Himes was unable to perform the tests, Officer Emerick placed him under arrest for DUI and for failing to operate his vehicle within a single lane of traffic. Subsequent chemical tests revealed that Himes' blood alcohol content was .259 %.

Consequently, the Commonwealth charged Himes with violation of 75 Pa.C.S. § 3731(a)(1), (4), DUI, and 75 Pa.C.S. § 3309(1), driving on roadways laned for traffic. Upon review, the district justice held the matter for trial and the case proceeded in the Court of Common Pleas before the Honorable Shad Connelly. Himes, in an omnibus pre-trial motion, moved to suppress all evidence of intoxication gathered incident to the stop, arguing that Officer Bowser had no authority to enforce the Motor Vehicle Code. Following hearing, Judge Connelly agreed and entered the suppression order from which the Commonwealth appeals.

In support of its order, the trial court recognized that a law enforcement officer, even if empowered by statute to enforce the Motor Vehicle Code, may not lawfully conduct a traffic stop unless he has first completed the full course of municipal police training prescribed by 37 Pa.Code § 203.51 (Act 120). Opinion, December 11, 1997, at 6. The court reasoned, accordingly, that though WCOs are ostensibly empowered to conduct arrests for misdemeanors such as DUI, because the statute proscribing DUI is part of the Motor Vehicle Code, a WCO attempting to conduct a stop on that basis would be required to complete Act 120 training. *Id.* at 3–5. The court concluded that because Officer Bowser had not completed Act 120 training, he could not lawfully enforce the Vehicle Code. *Id.* at 6–7. Consequently, the court found that all evidence gathered incident to

the traffic stop Bowser had conducted was subject to suppression. *Id.* at 7–9.

In addressing an appeal from an order granting suppression of evidence, our scope of review is limited. Where, as here, the appeal in question is brought by the Commonwealth, we may consider only evidence introduced by the defense and so much of the evidence for the prosecution as, read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. DeWitt*, 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992). If the record so considered supports the trial court's findings, we are bound accordingly, and may reverse the suppression order only if the court's decision resulted from erroneous application of the law. *Commonwealth v. Williams*, 547 Pa. 577, 584, 692 A.2d 1031, 1034 (1997).

In the case at bar, the trial court based its order on findings that the traffic stop in question was conceived and executed by WCO Bowser, and that Bowser had not completed the training prescribed by Act 120. Opinion, *supra*, at 2, 6. Upon review of the record, we find the court's conclusions well supported. WCO Bowser testified that it was his decision to stop Himes' vehicle and that he personally executed the stop. N.T, November 24, 1997, at 11, 13. Although he noted that another officer had actually approached Himes' vehicle once the stop had been effected, Bowser admitted that the officer had done so at his request due to Bowser's concern that he himself was not in uniform. *Id.* at 13. Moreover, Bowser acknowledged that though he had some police training, he had not completed a specified number of hours and could not recall how many hours of instruction he had, in fact, attended. *Id.* at 7–8, 9–10.

Judge Connelly, in concluding that Bowser's attempt to effect a traffic stop was rendered unlawful by his lack of training, relied generally on the Supreme Court's opinion in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994). In *Leet*, the Supreme Court recognized the authority of a deputy sheriff to make warrantless arrests for putative violations of the Motor Vehicle Code occurring in his presence. *Id.* at 96, 641 A.2d at 303. Though the court instructed

that to enforce the Code, "a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth," such an instructional "requirement" was not the basis of the court's decision, and no specific training standard was enunciated. *Id.*

More recently, however, the Commonwealth Court clarified *Leet,* recognizing that in order to achieve "the same type of training that is required of police officers," an applicant must satisfy the "minimum curriculum requirements" of 37 Pa.Code § 203.51 (Act 120). *See Kline v. Commonwealth. Dept of Transportation,* 706 A.2d 909, 911 (Pa. Cmwlth.1998). In *Kline,* the court addressed a Commonwealth appeal from the trial court's order reinstating Cynthia Kline's operator's license following suspension for refusal to submit to chemical testing, DUI-related. The trial court had found that because the arresting officer had not completed the entire course of training prescribed by Act 120, he had no authority to enforce the Motor Vehicle Code. *Id.* at 912. Upon review, the Commonwealth Court observed that though the officer, a deputy sheriff, had completed instruction in enforcement of the Motor Vehicle Code that was substantially identical to that required by Act 120, he had not completed 520 hours of basic law enforcement instruction also required by the Act. The court reasoned, accordingly, that because the officer had not completed *all* course requirements, he had "only **part** of 'the same type of training' required of police officers as contemplated ... in *Leet.*" *Kline, supra,* at 912. The court concluded that, consequently, the officer was without authority to enforce the Motor Vehicle Code and affirmed the judgment of the trial court. *See id.* The court stated: "Thus, we hold that successful completion of the entire course of instruction formerly known as Act 120 instruction is required in order for an officer to have the authority to enforce the Vehicle Code." *Id.* at 912–13.

A waterways conservation officer does not enjoy the broad common law powers contemplated in *Kline,* but is empowered by statute to make arrests for certain offenses cogniza-ble under the Motor Vehicle Code. The statute recognizing these powers provides, in pertinent part:

(a) **Waterways patrolmen.**–Every waterways patrolman shall have the power and duty to:

\* \* \* \* \* \*

(12) When acting within the scope of their employment, to pursue, apprehend or arrest any individual suspected of violating any provision of Title 18 (relating to crimes and offenses) or any other offense classified as a misdemeanor or felony.

30 Pa.C.S. § 901(a)(12). Driving under the influence, though enumerated in Title 75, is classified as a misdemeanor, and is cognizable, therefore, as an offense for which a WCO may conduct a stop or arrest when acting within the scope of his or her employment. *Id.; See also* 42 Pa.C.S. § 3731(e)(1)(providing that first conviction for DUI shall be classified as misdemeanor of the second degree).

However, notwithstanding the statutory classification of DUI, we recognize, as did the Commonwealth Court in *Kline,* that "every vehicle stop involves the potential for a myriad of hazardous encounters," the incidence and severity of which are best controlled through comprehensive formal training for law enforcement officers. *Kline, supra,* at 912. We hold, accordingly, that a waterways conservation officer has authority to enforce the Motor Vehicle Code only when he has successfully completed the entire course of instruction specified at 37 Pa.Code § 203.51, formerly known as Act 120. Because WCO Bowser did not complete 520 hours of instruction in basic law enforcement as prescribed by the Act, we are compelled to conclude that he was without authority to enforce the Motor Vehicle Code, and his attempt to effect a traffic stop was unlawful. *See Kline, supra,* at 912. Consequently, evidence gathered incident to the stop and resulting arrest was subject to suppression.

Suppression of evidence is governed by the exclusionary rule and is appropriate where an individual exercises a right or privilege created by the state, in a manner

fairly attributable to the state, to deprive another of lawful protections. *See Commonwealth v. Price*, 543 Pa. 403, 410–11, 672 A.2d 280, 283–84 (1996) (finding that a traffic stop conducted by an FBI agent was unlawful action fairly attributable to the state that required application of exclusionary rule). Because we have concluded that the traffic stop conducted by WCO Bowser was unlawful, we must consider whether the stop was fairly attributable to the state, and whether Brian Himes' lawfully protected rights were infringed by that stop. Several cases offer significant guidance in this respect.

In *Price*, the Pennsylvania Supreme Court considered a motorist's claim that a traffic stop conducted by an FBI agent (Agent), on suspicion of DUI, impermissibly violated the motorist's Fourth Amendment right to be free from unlawful seizure. The court recognized that though the Agent had no lawful authority to conduct a stop on suspicion of DUI, his action was fairly attributable to the state because his use of the lights and siren on his vehicle, together with his display of an FBI badge, "imbued his actions with an official aura." *Id.* at 411, 672 A.2d at 284. The court concluded also that "because [the stop] was conducted under the color of state action, [it] clearly constituted a seizure for purposes of the Fourth Amendment." *Id.* at 412, n. 2, 672 A.2d at 284, n. 2, citing *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975). Though the court acknowledged that the ensuing arrest was conducted by local police whom the Agent had contacted, and not by the Agent himself, the Majority concluded nonetheless, that the evidence obtained pursuant to the arrest was impermissibly tainted and should have been suppressed. *Id.* at 413, 672 A.2d at 285. *See also Commonwealth v. Price*, 406 Pa.Super. 166, 593 A.2d 1288, 1292 (1996)(same).

Similarly, in *Commonwealth v. Bienstock*, 449 Pa.Super. 299, 673 A.2d 952 (1996), this court affirmed suppression of evidence obtained incident to an arrest for DUI because the initial stop, conducted by an agent of the Pennsylvania State Police Bureau of Liquor Control Enforcement, was beyond that agent's authority. *Id.* at 956. Upon review of the facts, the court concluded that because the agent conducted the stop while on duty, using an official car, and had activated his siren, his action exhibited "sufficient indicia of official conduct," to constitute state action. *Id.* at 955. Though the court acknowledged that a state trooper, and not the Liquor Control agent, had actually conducted the arrest at which the evidence was obtained, the court concluded that but for the unlawful stop, the arrest would never have occurred. *Id.* at 956.

In this case, we find, similarly, that the unlawful stop effected by WCO Bowser was fairly attributable to the state because Bowser's action, and that of the WCO acting under his direction, exhibited "sufficient indicia of official conduct" to constitute state action. *Id.* at 955. Initially, the Commonwealth raises no dispute that Bowser conducted the stop using an official vehicle and activated the vehicle's red emergency beacon light to signal Himes to pull over. Moreover, the record reflects that Bowser directed a junior officer to approach Himes' vehicle because he, unlike Bowser, was wearing a Pennsylvania Fish and Boat Commission uniform. N.T., *supra*, at 13. Both actions appear reasonably calculated to create an "official aura," consistent with state authority. Consequently, we find that the traffic stop effected by WCO Bowser carried "sufficient indicia of official conduct" to constitute state action. *Bienstock, supra*, 673 A.2d at 955. Moreover, because the stop was conducted under color of state action, it "clearly constituted a seizure for purposes of the Fourth Amendment." *Price, supra*, at 412, n. 2, 672 A.2d at 284. *See also Commonwealth v. Murray*, 460 Pa. 53, 60, 331 A.2d 414, 417 (1975) (use of police authority to effect seizure of individuals travelling on roadways must meet Fourth Amendment standards). Accordingly, we find no error in the trial court's ruling suppressing all evidence obtained as a result of the stop.

Order **AFFIRMED.**