741 A.2d 1281

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Cynthia Ann KLINE, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 18, 1998.

Decided Dec. 22, 1999.

Timothy P. Wile, Asst. Counsel In Charge, Appellate Section, Office of General Counsel, Harold H. Cramer, Asst. Chief Counsel, Vehicle & Traffic Law Division, Andrew S. Gordon, Chief Counsel, for Dept. of Transportation.

Paul A. Tufano, General Counsel, Office of General Counsel.

Craig P. Miller, Lock Haven, for Cynthia Ann Kline.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

We granted allowance of appeal in this case to determine whether a county deputy sheriff, who has completed the deputy sheriff's basic training course, the driving while under the influence modules given to municipal police officers under Act 120,[1] and training in field sobriety test administration, qualifies as a "police officer" for purposes of enforcing the Vehicle Code under the rationale of this Court's holding in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994). The Commonwealth Court held that the foregoing training failed to meet the requirements of *Leet*. We now reverse.

The facts are not in dispute. On May 18–19, 1996, the Clinton County Sheriff's Department, with assistance from five area municipal police departments, conducted a sobriety checkpoint on State Route 150 in Beech Creek Township, Clinton County, from approximately 11:30 p.m. until 3:45 a.m. At around 2:00 a.m., Appellee was stopped at the checkpoint by Clinton County Deputy Sheriff James Worden. While speaking with Appellee, Deputy Worden detected the odor of

---

1. Act 120, formally the Act of June 18, 1974, P.L. 359, 53 P.S. §§ 740—749.1, has been repealed and replaced and similar provisions are now found at 53 Pa.C.S. §§ 2161–2171.

alcohol and asked Appellee if she would submit to field sobriety tests. Appellee agreed and was turned over to Deputy Sheriff Michael J. Johnstonbaugh, who administered the tests. Appellee failed the tests and was arrested by Deputy Johnstonbaugh for driving under the influence of alcohol in violation of Section 3731(a) of the Vehicle Code, 75 Pa.C.S. § 3731(a). Deputy Johnstonbaugh further requested Appellee to submit to a blood alcohol test, which she refused.

Deputy Johnstonbaugh subsequently filed criminal charges against Appellee and reported her refusal of chemical testing to Appellant, Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing. Appellant then notified Appellee that as a result of her refusal to submit to chemical alcohol testing, her license was being suspended for a period of one year in accordance with Section 1547 of the Vehicle Code.[2]

On July 30, 1996, Appellee filed a statutory appeal from the one-year suspension of her operating privilege with the common pleas court. De novo hearings regarding Appellee's statutory appeal were conducted on November 14, 1996, and on May 19, 1997. By agreement of the parties, the only issue before the court was whether Appellee had been arrested by a "police officer" within the meaning of Section 1547(a). As noted, Section 1547 provides for a driver's implied consent to submit to chemical alcohol testing where "a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle . . . while under the influence of alcohol. . . ." 75 Pa.C.S. § 1547(a)(1) (emphasis added). Specifically, Appellee

---

**2.** Section 1547, entitled "Chemical testing to determine amount of alcohol or controlled substance," provides in relevant part:

(A) GENERAL RULE.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol. . . .

challenged Deputy Johnstonbaugh's legal authority to arrest her since, she maintained, as a deputy sheriff, he was not a "police officer" authorized to enforce the Vehicle Code.[3]

After conducting hearings at which Appellant presented evidence regarding Deputy Johnstonbaugh's training, by opinion and order dated May 29, 1997, the common pleas court sustained Appellee's appeal concluding that the training Deputy Johnstonbaugh received did not constitute "the same type of training" received by municipal police officers so as to qualify him as a "police officer" for purposes of enforcing the Vehicle Code under this Court's holding in *Leet.* Appellant filed a timely appeal to the Commonwealth Court from the common pleas court's decision. On February 6, 1998, the Commonwealth Court affirmed the decision of the common pleas court and also held that Deputy Johnstonbaugh did not have sufficient training pursuant to *Leet.*

In *Leet,* this Court held that deputy sheriffs have authority to make warrantless arrests for motor vehicle violations committed in their presence. We concluded that the common law powers historically conferred upon sheriffs include "the power to enforce the motor vehicle code, and that such powers have not been abrogated by statute or otherwise." *Leet,* 641 A.2d at 301. Despite our finding that sheriffs retain their common law authority to enforce the motor vehicle code, we nevertheless agreed with the assertion that "anyone who enforces the motor vehicle laws should be required to undergo training appropriate to the duties." *Id.* at 303. Thus, we held:

> It is certainly within the proper function of government and in keeping with the realities of the modern world to require adequate training of those who enforce the law with firearms. Policemen, to whom the legislature has given primary responsibility for enforcement of the motor vehicle code, are required by statute to undergo formal training

**3.** The common pleas court was also sitting as an *en banc* criminal court to address issues raised by Appellee in an omnibus pre-trial motion and a motion to suppress evidence filed in relation to the criminal charges against her for driving under the influence of alcohol. The appeal before the Commonwealth Court, however, was limited to the court's disposition of Appellee's civil statutory appeal.

prior to enforcing the law. We deem this requirement to apply equally to sheriffs who enforce motor vehicle laws. Thus a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth.

*Id.* (footnotes omitted) (emphasis added).

Because the record was incomplete regarding the specific training the sheriff in *Leet* had received, we remanded the case for a finding "as to whether deputy sheriff Gibbons had completed appropriate law enforcement training...." *Id.* We noted our knowledge of the Deputy Sheriff's Education and Training Act, 71 P.S. § 2101 et seq., and the fact that it should be considered by the court when making its determination of whether Gibbons had completed the appropriate law enforcement training.

Here, despite the fact that the Commonwealth presented extensive evidence regarding the specific formal training Deputy Johnstonbaugh received, both the common pleas court and the Commonwealth Court held that unless Deputy Johnstonbaugh received the exact training municipal police officers receive pursuant to Act 120, i.e., unless Deputy Johnstonbaugh was certified pursuant to Act 120, he was without the authority to enforce the Vehicle Code. Both courts determined that our holding in *Leet* required such a conclusion. Additionally, both courts relied on the Superior Court's decision in *Commonwealth v. Roose*, 456 Pa.Super. 238, 690 A.2d 268 (1997), wherein the court stated that "only certification under the Municipal Police Officers Education and Training Act, 53 Pa.C.S. § 740 et seq. is sufficient to comply with [the] requirement of *Leet*." Common pleas court decision at 3, citing, *Roose*, 690 A.2d at 271 n. 4; See also *Kline v. Dept. of Transp.*, 706 A.2d 909, 912 (Pa.Cmwlth.1998) (holding that "successful completion of the entire course of instruction formerly known as Act 120 instruction is required in order for an officer to have the authority to enforce the Vehicle Code").

■ Appellant now argues that both the common pleas court and the Commonwealth Court erred in concluding that Deputy Johnstonbaugh did not have sufficient training to

enforce the Vehicle Code under *Leet*.[4] Moreover, the Commonwealth argues that reliance on *Roose* was misplaced since that case dealt with the authority of constables to enforce the Vehicle Code. The Commonwealth points out that subsequent to the Superior Court's decision in this case, this Court granted allowance of appeal in *Roose* and distinguished the facts of that case from those of *Leet* on this basis. *Commonwealth v. Roose*, 551 Pa. 410, 710 A.2d 1129 (Pa.1998). The Commonwealth further notes that this Court, in affirming *Roose*, failed to adopt the court's bright-line "Act 120 certification or nothing" interpretation of *Leet*.

■ We agree with the Commonwealth that the Commonwealth Court's interpretation of our holding in *Leet* as essentially requiring certification pursuant to Act 120 is erroneous. Initially, as argued by the Commonwealth, the court's reliance on *Roose* was misplaced. In *Roose*, the appellant challenged the authority of a deputy constable to effectuate an arrest for Vehicle Code violations. The Superior Court held that constables lacked such authority. In so holding, the court distinguished constables and deputy constables from sheriffs, noting that constables and deputy constables, unlike sheriffs, are not employees of any municipal subdivision, are independent contractors, and are not under the control of the Commonwealth. Additionally, the court noted that no municipality is responsible for the actions of constables the way a city, borough, or township is responsible for its police or a county is responsible for its sheriff's office. *Roose*, 690 A.2d at 269. In addition to noting the differences between constables and sheriffs, the court compared the training that municipal police officers receive with that of constables. In conducting this examination, the court noted its view that only certification pursuant to Act 120 would constitute sufficient training for purposes of our holding in *Leet*. *Roose*, 690 A.2d at 271 n. 4. This language by the court, however, was gratuitous and amounted

4. The standard of review is whether the factual findings of the trial court are supported by competent evidence, whether the trial court committed an error of law, or whether the trial court abused its discretion. *Commonwealth, Dept. of Transp. v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).

to nothing more than dicta as *Leet* involved a deputy sheriff and *Roose* involved a deputy constable. Moreover, on appeal, we limited our analysis to distinguishing deputy constables from sheriffs; we did not adopt the court's view regarding Act 120 certification. We noted:

> Unlike sheriffs, whose powers grew in the common law tradition to include broad law enforcement authority, the powers of constables were not developed as fully in such a strong common law tradition, but were rather set forth in a series of statutes. Thus it is not appropriate to follow the analysis of *Leet*, supra, wherein we reasoned that sheriffs, due to their common law powers, had the authority to enforce the motor vehicle laws unless contravened by statute; conversely as to constables, it seems proper to conclude that unless a statute empowers them to enforce the vehicle laws, then they do not possess the legal authority to do so.

*Commonwealth v. Roose*, 551 Pa. 410, 710 A.2d 1129, 1130 (1998).

In *Leet*, we did not require that sheriffs complete Act 120 certification in order to enforce the Vehicle Code pursuant to their common law authority. Rather we held that sheriffs must complete "the same *type* of training as municipal police officers" in order to do so. The Commonwealth Court here, and the Superior Court in *Roose*, interpreted our language in *Leet* much too narrowly. In *Leet*, we provided specific guidance to the lower court with regard to its decision of whether the sheriff there received sufficient training to enforce the Vehicle Code. As noted, we specifically referred the fact-finder to the Deputy Sheriff's Education and Training Act, 71 P.S. § 2101 et seq., as relevant to its consideration of whether sheriffs have sufficient training to enforce the Vehicle Code. Obviously, if we thought that only Act 120 certification was sufficient, we would have merely remanded for a finding as to whether the deputy sheriff in the case received such training.

Having concluded that training other than Act 120 certification may be sufficient for purposes of Vehicle Code enforcement under our holding in *Leet*, we now turn to the

question of whether Deputy Johnstonbaugh received sufficient formal training thereunder.[5]

Initially, we note that formal training for municipal police officers consists of 520 hours of instruction. 37 Pa.Code § 203.51. This instruction includes the following: law enforcement orientation (44 hours); professional development (81 hours); law (98 hours); motor vehicle code (30 hours); patrol procedures and operation (40 hours); investigations (41 hours); communications (30 hours); handling violent or dangerous people (13 hours); custody (20 hours); first aid and CPR (45 hours); firearms (52 hours); and operation of patrol vehicles (26 hours).

Basic training for sheriffs and deputy sheriffs, on the other hand, consists of 160 hours of instruction including the following: criminal justice, history of the sheriff's role and powers and duties of the sheriff (7 hours); Pennsylvania courts (4 hours); civil procedure (30 hours); crimes code, criminal procedure and evidence (18 hours); courtroom security (6.5 hours); prisoner transportation (6.5 hours); first aid (17 hours); crisis intervention (10 hours); firearms (24 hours); self-defense, defense tactics, mechanics of arrest and physical conditioning (27 hours); and communications and professional development (10 hours).

The record indicates that Deputy Johnstonbaugh completed the basic training requirements for deputy sheriffs. Additionally, Deputy Johnstonbaugh successfully completed a 4–day course of instruction in standardized field sobriety testing procedures provided by the Pennsylvania Department of Education. Finally, the record reflects that Deputy Johnstonbaugh received a certificate from the Lackawanna Junior College Police Academy, reflecting that he successfully completed 32 hours of instruction in motor vehicle codes, 8 hours of instruction in accident investigation and 5 hours of instruction in driving under the influence. The Commonwealth presented testimony reflecting that the Vehicle Code and DUI training Deputy Johnstonbaugh received were the exact same

5. Here, unlike *Leet*, there is a complete record regarding the formal training Deputy Johnstonbaugh received.

training and course modules that are required of municipal police cadets seeking Act 120 certification. N.T. 5/19/1997 at 19–20, 29.

Although Deputy Johnstonbaugh did not receive the exact same training as a municipal police officer would receive pursuant to Act 120, we nevertheless conclude that he "complete[d] the same type of training that is required of police officers throughout the Commonwealth" as required by our holding in *Leet* for purposes of enforcing the Vehicle Code. As noted, Deputy Johnstonbaugh received basic training as a deputy sheriff, some of which overlaps the training required of municipal police officers pursuant to Act 120. In addition, he received significant additional training regarding field sobriety administration. Finally, with respect to Vehicle Code enforcement, particularly regarding driving while under the influence violations, Deputy Johnstonbaugh received precisely the same training as a municipal police officer cadet would receive in an Act 120 certification program.

Based on the foregoing, we conclude that Deputy Johnstonbaugh was authorized to enforce the Vehicle Code. Thus, we reverse the Commonwealth Court's order affirming the common pleas court decision which sustained Appellee's appeal from the one year suspension of her operating privilege.