COMMONWEALTH of Pennsylvania,
Appellee

v.

Cory DOBBINS, Appellant.

Superior Court of Pennsylvania.

Submitted April 13, 2005.

Filed July 28, 2005.

Robert G. Fleury, Troy, for appellant.

Stephen G. Downs, Assistant District Attorney, Towanda, for Commonwealth, appellee.

Before: DEL SOLE, P.J., JOYCE and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 Cory Dobbins was convicted of various drug offenses centered on the activity of a methamphetamine lab. He complains the investigation, procurement of a search warrant and arrest were illegal because those activities were carried out by officers of the sheriff's department of Bradford County, rather than by police officers. After review of the submissions by the parties, relevant law and the official record, we affirm.

¶ 2 Bradford County Sheriff's Deputies Christopher Burgert[1] and David Hart went to a residence in Bradford County attempting to find April Harris, whose name had come up in a prior investigation regarding a methamphetamine ring. The deputies did not have a warrant but were looking to talk to Harris. Harris was not at the residence, a mobile home. At that time, both deputies smelled ether, a component used in the manufacture of methamphetamine. The ether smell came from both the mobile home and a nearby barn, which was also located on the property. A car was parked next to the barn. As the deputies walked to the barn, they noticed a white male at the rear of the barn. They announced themselves as deputies and attempted to speak to the male. The male resembled a person known to Deputy Hart as Cory Dobbins. The male fled the scene into nearby woods. Dobbins' truck was parked behind the mobile home.

¶ 3 The deputies noticed various items around the barn and mobile home that were consistent with the manufacture of methamphetamine. These items included propane tanks (often used to store anhydrous ammonia), clear plastic tubing, rubber gloves, salt, and a milk jug containing a white sludgy substance. Deputy Evans arrived at the scene later and detected the smell of ammonia on the other side of the barn. Before obtaining a search warrant, the deputies spoke with State Trooper McKee who informed them he had confiscated methamphetamine and methamphetamine precursors from that residence on a prior occasion.

¶ 4 A search warrant was obtained based on the observations of the deputies and information provided by Trooper McKee. The warrant was executed and substantial evidence of methamphetamine manufacturing and methamphetamine was found and confiscated. A warrant for Dobbins' arrest was obtained and Dobbins was subsequently arrested.

■ ¶ 5 Basically, Dobbins claims that under the dictates of *Kopko v. Miller*, 842 A.2d 1028 (Pa.Cmwith.2004), only police officers have the authority to investigate felonies and make arrests. However, we believe that case law and statutes mandate a finding that sheriffs, when properly trained under the Municipal Police Education and Training Law (Act 120), are law enforcement officers and as such have a broad common law power to enforce the law, including the ability to arrest for felony drug violations. The broad common law powers of law enforcement continue as long as those powers are not unequivocally abrogated by statute.

■ ¶ 6 We begin by noting that while *Kopko* ruled sheriff's deputies have no authority to conduct wiretap surveillance, that power being limited by statute, sheriffs' authority is derived from broad common law powers and continues unless restricted by statute. The derivation of power was enunciated by our Supreme Court in *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), which stated:

> Though it may be unnecessary to cite additional authority, Blackstone confirms the common law power of the sheriff to make arrests without warrant for felonies and for breaches of the peace committed in his presence. Indeed, such powers are so widely known and so universally recognized that it is hardly necessary to cite authority for the proposition. To make the point, how few children would question that the

---

1. Deputy Burgert completed the Municipal Police Officer's training course and received additional training specifically geared towards methamphetamine from both the DEA and the "Multijurisdictional Counterdrug Task Force" [sic].

infamous Sheriff of Nottingham had at least the authority to arrest Robin Hood.

*Id.* at 303 (citations omitted). Our Supreme Court continued with this rationale:

In short, it is not necessary to find a motor vehicle code provision granting the sheriffs power to enforce the code—sheriffs have had the power to enforce the laws since before the Magna Carta; rather, it would be necessary to find an unequivocal provision in the code abrogating the sheriff's power in order to conclude that the sheriff may not enforce the code.

*Id.*

¶ 7 Although the factual scenario of *Leet* is different from that presented here, *Leet* nonetheless teaches us that a sheriff's power to enforce the law is abrogated only by specific statute. Also, *Leet* points out, in *dicta*, that the broad common law duties of a sheriff include the power to arrest for felonies.

¶ 8 *Leet* carries an additional requirement for the proper exercise of the common law powers of a sheriff. To protect public safety, adequate training must be provided to those who enforce the law with firearms. The training referred to in *Leet* is that found in Act 120. As noted earlier, at a minimum, Deputy Burgert has received this training.

¶ 9 Shortly after *Leet* was published, the legislature added a definition of "police officer" to 18 Pa.C.S. § 103. A police officer is one who has successfully completed the requirements under Act 120 and specifically includes only a sheriff of a county of the second class (Allegheny County).[2] Thus, it might be argued that the legislature has specifically abrogated the common law powers of a sheriff not of Alleghe-

ny County. Initially, we note that just because only an Allegheny County Sheriff is defined as a police officer under section 103, it does not mean that any other sheriff in the Commonwealth can no longer be classified as a law enforcement officer. Then, section 103 does not list what powers a police officer (and sheriff of Allegheny County) possesses that other law enforcement officers do not. For that, one must look to specific statutes rather than the general definitions. If a statute specifically limits enforcement capabilities to "police officers," then the section 103 definition becomes relevant.

¶ 10 To that end we look to the administrative provision of the Controlled Substances Act, 35 P.S. § 780–101 *et seq.* Section 780–134 grants primary powers of enforcement of the Act to the Department of Health. However, subsection (d) states:

Nothing contained herein shall be deemed to limit the authority of the Bureau of Drug Control, the Pennsylvania State Police, the Department of Justice or any other law enforcement agency in dealing with law enforcement matters with respect to persons engaged in the unlawful importation, manufacture, distribution, sale and production of controlled substances, other drug or devices or cosmetics nor the authority of the council in performing any duties imposed upon it by the "Pennsylvania Drug and Alcohol Abuse Act."

35 P.S. § 780–134(d).

■ Notably, this section mentions not only the state police, but also "any other law enforcement agency dealing with law enforcement matters." Thus, the Controlled Substances Act contemplates enforcement not only by the Board of Health

---

2. It is unclear why the legislature decided that only Allegheny County sheriffs are con-

sidered to be "police officers." The notes in the consolidated statutes offer no assistance.

and the police, but also any other agency dealing with "law enforcement matters." As discussed above and as will be further explored, our Supreme Court has already indicated that a sheriff is involved in law enforcement matters. Therefore, the Controlled Substances Act does not abrogate the common law powers of a sheriff to enforce the Act. The Act does not limit enforcement to "police officers," therefore the definitional limitation of 18 Pa.C.S. § 103 does not apply to this section.

¶ 11 A law enforcement officer is not defined in Title 18, but is defined at Pa. R.Crim.P 103, 42 Pa.C.S.A. A law enforcement officer is any person who is by law given the power to enforce the law when acting within the scope of employment. *Leet* makes it clear that sheriffs possess that power. Furthermore, our Supreme Court has upheld the sheriff's right to enforce the law and make arrests after the amendment of 18 Pa.C.S. § 103. In *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002), seven years after the legislature added the definition of "police officer" to the statute, our Supreme Court reiterated the sheriff's common law power to arrest as well as the power to issue a citation for an offense not personally witnessed. In *Lockridge*, the offense was a traffic citation for driving with a suspended license. Lockridge argued that *Leet* and the Motor Vehicle Code limited a sheriff's power to arrest to only those situations where the sheriff actually witnessed the offense. Our Supreme Court, however, determined the Rules of Criminal Procedure trumped the Motor Vehicle Code in that the Pennsylvania Constitution grants the Supreme Court exclusive powers for rulemaking and thus a statute cannot abrogate any of the procedural rules the Supreme Court has adopted. *Lockridge,* 810 A.2d at 1195. Our Supreme Court found that Pa.R.Crim.P. 103, 402, 405 and 410 all worked together to allow a law enforcement officer, which included a sheriff, to issue a citation based upon information received.

¶ 12 From *Lockridge* we take the idea that a law enforcement officer, in addition to the broad common law powers stated in *Leet,* is also not specifically limited by statute if the Supreme Court has provided otherwise in its exclusive function as a rule maker.

■ ¶ 13 The applicable rules in this matter are those pertaining to search warrants. *See* Pa.R.Crim.P. 200–211. These rules specifically mention "law enforcement officers" as those who are authorized to serve and execute search warrants. Thus, there is no problem with a sheriff performing those duties. Interestingly, the Rules of Criminal Procedure do not state who may apply for a search warrant. Rule 202, addressing local options for issuing search warrants where the local district attorney applies for the warrant, does mention returning a disapproved application to the police officer who prepared the written application.[3] This might imply, at least when the local option is applicable, that a police officer supplies the information for the affidavit of probable cause. However, *Leet* and *Lockridge* indicate that an unequivocal statement abrogating the common law power of sheriff is needed, not an implication. Also, police officers are only mentioned in Rule 202.

---

**3.** If we accept a strict interpretation of this language, then under the local option no one other than a police officer may apply for a search warrant. If this is the case then we must be ready to accept the absurd result of the impossibility of a DEA agent or the Attorney General's office applying for a warrant under Rule 202. Although Rule 202(D) does state that a defendant shall not be entitled to relief based solely upon a violation of this rule.

¶ 14 Rule 206, which describes the contents for application for a search warrant states:

> Each application for a search warrant shall be supported by written affidavit(s) signed and sworn to or affirmed before an `issuing authority, which affidavit(s) shall:
>
> (1) state the name and department, agency or address of the affiant

The language "department" or "agency" does not specifically mention either "police officer" or "law enforcement officer." It cannot be credibly argued that the language used in this rule does not encompass police officers, yet they are not specifically mentioned. The use of department and agency,[4] rather than a specific listing of all possible law enforcement agencies, would seem, therefore, to be a legislative shorthand encompassing the spectrum of law enforcement agencies. As it has already been demonstrated that a sheriff and a sheriff's office are included in the pantheon of law enforcement, it may be fairly asserted that a sheriff may supply the requisite information to apply for a search warrant.

¶ 15 Finally, we note with interest the decision in *Commonwealth v. Taylor*, 450 Pa.Super. 583, 677 A.2d 846 (1996), that held that a constable possesses the common law power, not abrogated by statute, to make warrantless arrests for felony violations of drug laws. Based upon reasoning similar to *Leet*, a panel of our Court noted that even though a constable's powers are less and jurisdiction smaller than a sheriff's, the constable still possesses the right to make a warrantless felony drug arrest.[5] It would be a very odd interpretation of law to allow a constable the right to make a felony drug arrest, but deny that same right to the sheriff. We will not interpret the law to achieve that peculiar result.

¶ 16 Our Supreme Court has determined that a sheriff is involved in law enforcement and that the powers of the office are broadly derived from the common law. *See Leet, supra.* Because those powers are common law based, there must be a specific abrogation of those powers to defeat the general law enforcement capabilities of the sheriff. *Id.* The Controlled Substances Act does not specifically abrogate the common law enforcement capabilities of the sheriff's office regarding drug enforcement. Therefore, there are no specific statutory prohibitions to the sheriff's actions in this matter. Additionally, the Rules of Criminal Procedure contemplate the sheriff's participation in the search warrant process. There is no specific abrogation of the power of the sheriff in applying for a search warrant and the broad language used by our Supreme Court in formulating the rules for search warrants indicates an intent to include the whole spectrum of law enforcement offices, agencies, departments, etc. Based upon this reasoning, we find no merit to Dobbins' claim that the investigation, issuance of search warrant and his arrest were improper because they were not conducted by "police officers."

¶ 17 The general common law powers of the sheriff include the actions taken in this matter, and specifically, Deputy Burgert

---

**4.** Neither "department" nor "agency" is defined in 18 Pa.C.S. § 103 or Pa.R.Crim.P. 103.

**5.** It should be noted here that while *Taylor* was decided after the 1995 amendment to 18 Pa.C.S. § 103 (which added the definition of

"police officer"), the underlying actions all took place in 1991, well before the amendment. However, the amendment does not ultimately affect the reasoning of *Taylor* for the same reasons it does not affect the reasoning here.

has received the training necessary to exercise those general powers.

¶ 18 Judgment of sentence affirmed.

¶ 19 DEL SOLE, P.J., files a Dissenting Opinion.

## DISSENTING OPINION BY DEL SOLE, P.J.:

¶ 1 I dissent. I do not agree that the powers of sheriffs in enforcing the law extend to the actions taken in this case. In my view, those investigatory actions are exclusively the province of police officers, as defined by the General Assembly following *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), when it passed into law a definition of "Police Officer" which specifically includes "the sheriff of a county of the second class and deputy sheriffs of a county of the second class who have successfully completed the requirements of the ... Municipal Police Education and Training Law."[6] 18 Pa.C.S.A. § 103. Using the statutory construction canon *expressio unius est exclusio alterius*, the express mention of sheriffs in second-class counties implies the exclusion of sheriffs in all other counties. I note Allegheny County is the only current second-class county in Pennsylvania. *See* The Pennsylvania Manual, Vol. 116, December 2003, Section 6–3. Although the notes in the consolidated statutes offer no explanation for this distinction, it is my understanding that the distinction was made because Allegheny County was the only county in which sheriffs were required to undergo training pursuant to the Municipal Police Education and Training Law.

¶ 2 The Majority finds Section 103's definition irrelevant where the Controlled Substances Act grants powers of enforcement to "law enforcement agenc[ies]" and not to police officers; however, I can not overlook the legislature's post-*Leet* action when considering sheriffs' powers.[7]

¶ 3 The Majority appears to agree with the spirit of the legislature's distinction; its holding limits the proper exercise of identified powers to sheriffs who have been properly trained. I would agree that training is a critical area of inquiry. *Leet* is instructive in its consideration of the training requirements to properly execute powers granted by common law. The Court noted:

> It has been argued that to protect public safety, anyone who enforces the motor vehicle laws should be required to undergo training appropriate to the duties. It is certainly within the proper function of government and in keeping with the realities of the modern world to require adequate training of those who enforce the law with firearms. Policemen, to whom the legislature has given primary responsibility for enforcement of the motor vehicle code, are required by statute to undergo formal training prior to enforcing the law. We deem this requirement to apply equally to sheriffs who enforce motor vehicle laws. Thus a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth.

*Leet*, 641 A.2d at 303 (footnotes omitted).

¶ 4 The *Leet* court specifically referenced the Municipal Police Officers' Education and Training Act. The ultimate result in *Leet* was a remand for determination of whether the sheriff had re-

---

6. *See* 37 Pa.Code § 203.1 *et seq*, MUNICIPAL POLICE OFFICERS' EDUCATION AND TRAINING PROGRAM.

7. I note the Majority does not discuss the definition of the Act's specified "law enforcement agency" but solely focuses on "law enforcement officer."

ceived "appropriate law enforcement training" to enforce the Motor Vehicle Code. *Id.* In *DOT, Bureau of Driver Licensing v. Kline*, 559 Pa. 646, 741 A.2d 1281 (1999), the Supreme Court explained that, while no specifically defined training is necessary to comply with *Leet*, a sheriff's training must be of the same type a municipal police officer would receive, particularly on the same subject matter. In *Leet* and *Kline*, the subject matter was the Motor Vehicle Code. The *Kline* court explained that the deputy sheriff had received the same training and courses on the Motor Vehicle Code and DUI as a municipal police cadet, thus satisfying the requirement of *Leet.*

¶ 5 Thus, if we were to use *Leet* to determine a sheriff's power to conduct an investigation like the one in this appeal, we would need to examine what, if any, training is received by sheriffs in the relevant field, namely criminal investigations. We know municipal police officers are trained in this area. *See* 37 Pa.Code § 203.51(b)(11). A proper analysis would require findings on the training requirements for both sheriffs and municipal police officers. The Majority relies on the fact that the deputy sheriffs who initiated the investigation in this case may have had municipal police training because they had other jobs as police officers; however, I would find these individuals' experience is irrelevant in determining sheriffs' powers in general.

¶ 6 Further, I do not find that the holding in *Leet* leads to the conclusion reached by the Majority. *Leet*'s holding is limited to circumstances not present in this case. Justice Flaherty, writing for the Majority, found the common law powers of a sheriff

to make warrantless arrests for breaches of the peace committed in the sheriff's presence extended to making arrests for motor vehicle violations committed in the presence of a sheriff.[8] In this case, the sheriffs were conducting an investigation, thus looking for a breach of the peace, not witnessing one.

¶ 7 I also find that *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002), does not lend support for the Majority's holding. Unlike in *Lockridge*, no rules pertaining to the objected-to exercised powers identify law enforcement officers (or sheriffs) as holders of such powers.

¶ 8 Accordingly, while I find the Majority's reliance on *Leet* to justify a finding of common law authority for sheriffs to exercise the powers exercised in this case improper and, at a minimum, incomplete, I would find no authority, based on the General Assembly's post-*Leet* statutory pronouncement.

---

**8.** *Commonwealth v. Taylor*, 450 Pa.Super. 583, 677 A.2d 846 (1996), cited by the Majority as analogous to this case, also involved a "breach of the peace" committed in the presence of a constable.