934 A.2d 1170

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Cory DOBBINS, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 2006.

Decided Nov. 20, 2007.

72

Andrea C. Parenti, Esq., Thomas W. King, III, Esq., Dillon McCandless King Coulter & Graham L.L.P., Butler, for Pennsylvania Sheriffs' Association.

Robert G. Fleury, Esq., Towanda, for Cory Dobbins.

Stephen G. Downs, Esq., Bradford County District Attorney's Office, Towanda, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Justice BAER.

For the fifth time in the past fifteen years, this Court is called upon to clarify the breadth of county sheriffs'[1] authority

---

1. In this Opinion and in the prior decisions discussed herein, county sheriffs are referred to variously as sheriffs, deputy sheriffs, sheriff's deputies, and deputies. We use these terms interchangeably to refer to officers with the relevant county sheriffs' offices, and the choice of one

to investigate, cite, and arrest those who break the law. In a series of cases over that span, we have recognized sheriffs' authority to arrest for breaches of the peace or felonies committed in their presence and to enforce the Vehicle Code, but denied them the opportunity to be trained and certified to utilize the Wiretapping and Electronic Surveillance Act for want of express statutory authorization to do so. In this case, the Superior Court ruled that sheriff's deputies have common-law authority to conduct an independent investigation of a suspected methamphetamine manufactory, obtain a search warrant in furtherance of that investigation, and effectuate arrests for any offenses the investigation reveals. *See Commonwealth v. Dobbins,* 880 A.2d 690 (Pa.Super.2005). Thus, the court affirmed Appellant's convictions, relying on our opinion in *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994), and its progeny. We find *Leet* and progeny informative but not dispositive, and hold that they ultimately do not support the Superior Court's ruling. Rather, we hold that sheriffs have only such independent investigatory authority to seek out evidence of wrongdoing that is committed outside their presence as is expressly authorized by statute. Because the Controlled Substance Act provides sheriffs no such authority, we vacate the Superior Court's ruling, and remand for further proceedings.

## I.

Because this Opinion effectively adds a new link to a well-defined chain of cases considering sheriffs' law enforcement authority, and because the courts below and the parties now before us argue substantially from our earlier decisions, it is both beneficial and necessary to review these cases before recounting this case's procedural history.

In *Leet* we considered "whether a deputy sheriff has authority ... to make a warrantless arrest for motor vehicle violations committed in his presence." 641 A.2d at 300. In that case, a deputy sheriff driving a marked sheriff's vehicle ob-

title over another should not be construed to reflect any material distinction.

served defendant pass several cars illegally. The sheriff executed a traffic stop, and in the ensuing interaction discovered a controlled substance and other illegal items in the car. Defendant ultimately was charged with various motor vehicle and controlled substance violations. In the trial court, defendant sought suppression of all physical evidence on the basis that the deputy sheriff lacked authority to stop him for a traffic violation. The trial court granted suppression and a divided panel of the Superior Court affirmed.

On the Commonwealth's appeal to this Court, we rejected the lower courts' determinations that the Vehicle Code's pervasive references to "police officers" necessarily precluded deputy sheriffs from enforcing the code, turning instead to the common law to determine sheriffs' authority under these circumstances. We found in the historic evolution of the office in England and the United States an ongoing recognition of sheriffs' authority to "make arrests without a warrant for felonies and for breaches of the peace committed in [their] presence." *Id.* at 303 (citing BLACKSTONE, 4 COMMENTARIES ON THE COMMON LAW 289). Characterizing the Vehicle Code violation that initially provoked defendant's detention as a breach of the peace committed in the sheriff's presence, we determined that, absent an express statutory restriction on the sheriff's commonlaw authority to arrest for such a breach of the peace, the deputy sheriff in that case had not exceeded his authority in arresting defendant.[2]

---

**2.** We qualified our ruling, however, by holding that the training requirements the legislature imposed on municipal police officers applied equally to sheriffs.

> Policemen, to whom the legislature has given primary responsibility for enforcement of the motor vehicle code, are required by statute to undergo formal training prior to enforcing the law. * * * * Thus a sheriff or deputy sheriff would be required to complete the same type of training that is required of police officers throughout the Commonwealth.

*Leet,* 641 A.2d at 303 (footnote omitted). Finding the record inadequate to resolve the question of the arresting deputy sheriff's training, we remanded to determine whether he had completed "appropriate law enforcement training." *Id.*

That training requirement came to the fore in *Commonwealth, Dep't of Transp. v. Kline,* 559 Pa. 646, 741 A.2d 1281 (2000), in which we considered whether a deputy sheriff, who had completed training as

In *Commonwealth v. Lockridge*, 570 Pa. 510, 810 A.2d 1191 (2002), we considered whether the authority detailed in *Leet* extended to a circumstance in which the citing sheriff had not, himself, observed the Vehicle Code violation in question. In that case, a probation officer, who knew that her defendant was precluded from operating a motor vehicle as a condition of his probation, observed him driving a car. She reported her observations to the sheriff's office, providing a description of the vehicle and its license plate number. The deputy sheriff who received the call contacted the Bureau of Driver Licensing and verified that defendant's license was under suspension and that the vehicle in question was registered to defendant. Based upon these findings, the deputy filed a citation pursuant to Pa.R.Crim.P. 410 ("Filing of Citation")[3] with a district magistrate charging defendant with a summary offense. The district magistrate issued a summons to defendant, who pleaded not guilty and was convicted following a summary trial. On appeal, both the court of common pleas and the Superior Court rejected defendant's challenge to the deputy sheriff's authority to file the citation, and affirmed the conviction.

We granted allowance of appeal to address the deputy sheriff's authority to file a citation against defendant for a

rigorous and thorough as that provided to municipal police officers, "qualifies as a police officer for purposes of enforcing the Vehicle Code under the rationale of this Court's holding in [*Leet*]." *Id.* at 1281. Based on *Leet*, the lower courts had ruled that, because the arresting sheriff's training was not, in itself, the training provided for by Act 120, *see* Act of June 18, 1974, Pub.L. 359, 53 P.S. §§ 740, *et seq.*, *repealed and replaced*, Act of Dec. 19, 1996, Pub.L. 1158, No. 177, § 2(a), *codified*, 53 Pa.C.S. §§ 2161, *et seq.*, it was not "the same type of training" as a municipal police officer called for by *Leet*. We rejected the lower courts' readings of *Leet* as unduly strict. Rather, we held that, in order to enforce the Vehicle Code, sheriffs were required to have the "same *type* of training as municipal police officers." *Kline*, 741 A.2d at 1284 (internal quotation marks omitted; emphasis in original). We then found that the training received by the arresting deputy sheriff in *Kline* was adequate, and upheld defendant's conviction.

3. Pa.R.Crim.P. 410 provides, in relevant part, that "[w]hen it is not feasible to issue the citation to the defendant ..., a law enforcement officer shall institute a criminal proceeding in a summary case by filing a citation with the proper issuing authority."

violation that was not committed in the deputy's presence. We began by distinguishing *Leet,* which established only the "general proposition" that the deputy sheriff "was authorized to enforce the law," from the question presented, "whether [the sheriff] was authorized to enforce the Vehicle Code by filing the Citation" at issue. *Lockridge,* 810 A.2d at 1194. We observed a "fundamental difference between a warrantless arrest, the law enforcement action that was undertaken in *Leet,* and the filing of a [summary] citation." *Id.* While the power to arrest emanates first from the common law, the filing of a citation "concerns a process that is among those set out in the Pennsylvania Rules of Criminal Procedure for commencing a summary action." *Id.* Thus, in *Lockridge,* the sheriff's authority emanated not from the common law, as in *Leet,* but rather from this Court's exclusive, constitutionally-based rule-making authority,[4] our exercise of which cannot be abrogated by statute. *See Lockridge,* 810 A.2d at 1194–95 (citing *In re 42 Pa. C.S. § 1703,* 482 Pa. 522, 394 A.2d 444 (1978)).

Proceeding from this principle, we noted that Rule 410 granted authority to file a citation to a "law enforcement officer," defined in Pa.R.Crim.P. 103 as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment." We held that sheriffs "enforce the law," *Lockridge,* 810 A.2d at 1196 (citing *Leet,* 641 A.2d at 301–02), and therefore are "law enforcement officers" for purposes of the Rules of Criminal Procedure. Thus, we determined that Pa.R.Crim.P. 410 authorized a sheriff to file a citation for a summary violation of the Vehicle Code, even when he did not personally observe the violation in question, and upheld the judgment of sentence.

Most recently, in *Kopko v. Miller,* 586 Pa. 170, 892 A.2d 766 (2006)(*Kopko II* ),[5] a case we address in greater depth below,

---

4. *See* Pennsylvania Const. Art. V, § 10(c).

5. The lower courts and the parties did not have the benefit of our decision in *Kopko II* until shortly before they filed their briefs with this Court, hence in the lower courts they argued from the Commonwealth Court decision that we affirmed in *Kopko II.* Because the lower courts

this Court considered sheriffs' claim that they were entitled to receive the same training under the Wiretapping and Electronic Surveillance Act (Wiretapping Act)[6] that state troopers administered to municipal police officers. The Commissioner of the State Police took the view that, because sheriffs were not authorized to conduct investigations for the crimes to which the Wiretapping Act applies, they were not entitled to that training. We agreed, holding that sheriffs "are not 'investigative or law enforcement officers' pursuant to the definitions contained in the Wiretapping Act, and, accordingly, are not authorized to receive the training" reserved to those officers by the act. *Id.* at 770. In an aspect of that decision especially relevant to the instant case, we held that *Leet* could not furnish the requisite authority, as our decision in *Leet* vindicated only sheriffs' commonlaw authority to arrest for breaches of the peace and felonies committed in their presence, authority "no different from that of a private citizen." *Id.* at 774.

Thus, as we will develop more fully below, in the decisions preceding *Kopko II*, we resisted calls to curtail sheriffs' law enforcement power by identifying a combination of common-law and rules-based spheres in which sheriffs are authorized to enforce the law. In *Kopko II*, however, faced with the prospect of sheriffs who sought training in the intrusive investigatory techniques authorized by the Wiretapping Act, we held that sheriffs' authority, in the absence of legislative action to the contrary, was substantially narrower than that of municipal police officers.

## II.

With this legal background in mind, we turn to the instant case. On July 10, 2003, Bradford County Sheriff's Deputies

had occasion to discuss the Commonwealth Court's decision in that case, we find it useful in analyzing this case to refer both to that court's *Kopko* decision and our decision affirming it. We refer hereinafter to the Commonwealth Court's decision, 842 A.2d 1028 (Pa.Cmwlth.2004), as *Kopko I*, and to our decision affirming it as *Kopko II*.

**6.** *See* Act of October 4, 1978, Pub.L. 861, No. 124, § 2, *as amended*, 18 Pa.C.S. §§ 5701, *et seq.*

Christopher Burgert and David Hart visited a residence in Troy, Pennsylvania, to locate and question one April Harris, whose name had come up in connection with a prior methamphetamine-centered investigation in Bradford County. The deputies did not find Harris at her mobile home, but as they moved deeper into the property they detected what they believed to be an odor of ether, a chemical deputies knew to be used in the manufacture of methamphetamine, emanating from a nearby barn. The deputies observed a man nearby on the property. They approached the man, whom Deputy Hart recognized as Appellant Cory Dobbins, and identified themselves as sheriff's deputies. At the deputies' approach Appellant fled into the woods. Deputies gave chase in vain.

Returning to the barn, deputies observed items consistent with methamphetamine manufacture, including tanks that could be used to contain anhydrous ammonia,[7] clear plastic tubing, rubber gloves, salt, and a jug containing a white sludge. A third officer, Sheriff's Deputy Evans, arrived and detected an odor of ammonia in the barn's vicinity. Deputies next contacted a state trooper, Officer McKee, who informed them that he had confiscated methamphetamine and methamphetamine precursors from the same property in the past.

Based on their observations and the information provided by Officer McKee, deputies sought and obtained a search warrant from a district magistrate. They then returned to the property with one or more additional deputies and executed the warrant. Inside the barn, deputies recovered methamphetamine and substantial evidence of methamphetamine manufacture. They also encountered one Robert Jordan, who confirmed that methamphetamine had been manufactured in the barn and implicated Appellant in the criminal enterprise.

The next day, on July 11, 2003, Deputy Hart filed with the same district magistrate a criminal complaint against Appellant based solely on evidence recovered during the prior day's search. The complaint asserted various violations of the

---

7. Anhydrous ammonia is a methamphetamine precursor. Sheriff's deputies acknowledged that the same container could be used to contain propane.

Controlled Substance, Drug, Device and Cosmetic Act (hereinafter Controlled Substance Act or Act),[8] including possession and manufacture of a controlled substance, *see* 35 P.S. §§ 780-113(a)(16)(simple possession), (30)(manufacture or possession with intent to deliver), as well as criminal attempt and criminal conspiracy to manufacture methamphetamine. *See* 18 Pa.C.S. §§ 901(a), 903(a). The district magistrate issued an arrest warrant for Appellant. On July 31, 2003, Appellant was arrested by authorities in Elmira, New York, and subsequently was returned to Bradford County by sheriff's deputies to face the charges pending.

Prior to the commencement of trial, in a Supplemental Omnibus Motion, Appellant sought dismissal of the charges based upon his contention that sheriff's deputies lacked the authority independently to investigate and prosecute drug offenses. In support of this claim, Appellant cited the Commonwealth Court's then-newly minted decision in *Kopko I*, 842 A.2d 1028, 1031 (Pa.Cmwlth.2004)(*Kopko I* ), *aff'd*, 586 Pa. 170, 892 A.2d 766 (2006)(*Kopko II* ), in which that court had ruled that sheriffs are not "investigative or law enforcement officer[s]" for purposes of the Wiretapping Act because they lack authority " 'to conduct investigations of or to make arrests for' the predicate offenses of the Act," *Kopko I*, 842 A.2d at 1039, including offenses under the Controlled Substance Act. *See* 18 Pa.C.S. § 5708(4). Appellant contended that in *Kopko I*, the Commonwealth correctly confined *Leet* narrowly to its circumstances, the commission of a breach of the peace in a sheriff's presence, and correctly ruled that *Leet*, in itself, vested sheriffs with no investigatory authority beyond that circumstance. The trial court denied Appellant's pre-trial motions, finding *Kopko I* distinguishable from the case at bar, for reasons explained below.

At the conclusion of the trial that followed, a jury convicted Petitioner for manufacturing methamphetamine, possession with intent to deliver methamphetamine, and attempt and conspiracy to manufacture methamphetamine. On July 28,

8. Act of April 14, 1972, Pub.L. 233, No. 64, *as amended*, 35 P.S. §§ 780-101, *et seq*.

2004, the court sentenced Appellant to an aggregate term of no fewer than forty-seven months and no more than twenty-three years of incarceration in state prison, and imposed a fine of $300.00.[9] Appellant again challenged sheriffs' authority in post-sentence motions, and again the trial court denied Appellant relief.

Although the trial court's two rulings that sheriff's deputies acted within the scope of their authority in investigating and filing a criminal complaint against Appellant differed in their articulation, the substantive thrust of the court's rationale for denying Appellant's challenges lay in its determination that this case more closely resembled *Lockridge* than it did *Leet* or *Kopko I*. Distinguishing the instant case from the latter two cases, the court determined that the investigation conducted in this case "had prior judicial authorization"—*i.e.*, the putative arrest warrant for April Harris, or, alternatively, the simple authority to enter the property to question her [10]—"and the procedures that were used . . . are specifically contemplated by the Pennsylvania Rules of Criminal Procedure," Pre–Trial Mem. & Ord. at 4, making this case apposite to *Lockridge*. The trial court, adopting one of our premises from that case,

9. Specifically, for manufacturing methamphetamine, the trial court sentenced Appellant to pay a $300.00 fine and serve two to fifteen years' imprisonment; for conspiracy to manufacture methamphetamine, the court imposed a sentence of seventeen months' to seven years' imprisonment; and for possession with intent to deliver of methamphetamine, the court imposed a sentence of six months' to one year's incarceration, sentences to run consecutively. On the fourth count of conviction, attempt to manufacture methamphetamine, the court imposed no sentence, ruling that it merged for sentencing purposes with the manufacturing charge. *See* Sentencing Order, 7/28/04.

10. The trial court initially indicated that deputies entered the property "pursuant to a warrant they had for the arrest of April Harris." Pre–Trial Mem. & Ord. at 6. Later, the court acknowledged that this statement was erroneous because deputies had no arrest warrant for Harris, and merely sought to question her, but found the distinction immaterial. Post–Sent. Mem. & Ord. at 1–2 ("[I]t actually does not matter whether the Deputies had a warrant to arrest April Harris. . . . They, at a minimum, wanted to speak to her and they went onto the premises to do so. Anyone could have done the same."). Because, in either event, we hold that the sheriff's deputies lacked authority to seek a search warrant, the distinction does not bear on our decision.

determined that, under Pa.R.Crim.P. 103,[11] sheriff's deputies are "law enforcement officers." As such, the court determined that sheriff's deputies had authority pursuant to Pa. R.Crim.P. 200–211 to swear out and execute search warrants and parallel authority pursuant to Pa.R.Crim.P. 502–509 to file criminal complaints and serve arrest warrants. Thus, the court concluded, deputies acted pursuant to authority emanating from the Pennsylvania Rules of Criminal Procedure in conducting the investigation that led to Appellant's arrest.

On direct appeal to the Superior Court, Appellant challenged the trial court's rulings that sheriff's deputies had such authority. A divided panel of the Superior Court, then-President Judge Del Sole dissenting, ruled that a sheriff, "when properly trained under the Municipal Police Education and Training Law (Act 120), [is a] law enforcement officer [ ] and as such [has] a broad common law power to enforce the law, including the ability to arrest for felony drug violations." *Dobbins*, 880 A.2d at 691.[12] Relying on our decision in *Leet* to a much greater extent than the trial court had done, the Superior Court ruled that "the broad common law duties of a sheriff include the power to arrest for felonies," and "that a sheriff's power to enforce the law is abrogated only by specific statute." *Id.* at 692.[13]

---

**11.** Pa.R.Crim.P. 103 defines "law enforcement officer" as "any person who is by law given the power to enforce the law when acting within the scope of that person's employment."

**12.** Notably, although Deputy Burgert was affiant for the search warrant, Deputy Hart was affiant on the criminal complaint. The record does not indicate whether Deputy Hart had completed Act 120 training or its equivalent at the relevant time, a deficiency that might require a remand were we not to find that the investigation exceeded deputies' authority on another basis. *See* Leet, 641 A.2d at 303 (remanding to determine whether sheriff had completed requisite training (*i.e.*, "the same type of training that is required of police officers") to enforce the Vehicle Code).

**13.** In so ruling, the court notably omitted our language in *Leet* restricting sheriffs' arrest authority to breaches of the peace and felonies *committed in the sheriff's presence*. *Compare* Leet, 641 A.2d at 303 (citing BLACKSTONE, 4 COMMENTARIES ON THE COMMON LAW 289)(upholding sheriffs' authority to make arrests without a warrant "for felonies and for breaches of the peace committed in [their] presence"); Kline, 741 A.2d at 1283 (observing that, per *Leet*, "deputy sheriffs have authority to

Applying this *Leet*-derived approach to the instant case, the court turned to the Controlled Substance Act in an effort to discern whether it abrogates sheriffs' commonlaw authority. Noting that the Act does not define "law enforcement officer" or "law enforcement agency,"[14] the court observed that the Act 77 provides that its provisions "shall [not] be deemed to limit the authority of the Bureau of Drug Control, the Pennsylvania State Police, the Department of Justice *or any other law enforcement agency* in dealing with law enforcement matters with respect to" violations of that Act. 35 P.S. § 780–134(d)(emphasis added).[15]

make warrantless arrests for motor vehicle violations committed in their presence") *with Dobbins*, 880 A.2d at 691 (finding in sheriffs the "ability to arrest for felony drug felonies" without an in-presence qualification).

**14.** The court also noted that, following our decision in *Leet*, the General Assembly amended the Crimes Code to define "police officer" to include "the sheriff of a county of the second class and deputy sheriffs of a county of the second class who have successfully completed the requirements [of Act 120]." 18 Pa.C.S. § 103. Observing that, presently, Allegheny County is the only "second class" county in Pennsylvania, *Dobbins*, 880 A.2d at 692; *see id.* at 695 (Del Sole, P.J.E., dissenting)(citing 116 PENNSYLVANIA MANUAL § 6–3 (Dec.2003)), the court nevertheless denied that this evinced legislative intent to abrogate sheriffs supposedly broad commonlaw power everywhere except Allegheny County, observing that sheriffs in other counties might achieve the same level of training as their counterparts in Allegheny County. Then–President Judge Del Sole disputed this aspect of the court's holding, contending that the sorts of investigatory actions here at issue "are exclusively the province of police officers" as defined by the General Assembly in its 1995, post-*Leet* amendment to 18 Pa.C.S. § 103. Dobbins, 880 A.2d at 695 (Del Sole, P.J., dissenting). Noting our emphasis on sheriffs' training in *Leet* and *Kline*, the dissent observed as a possible explanation for § 103's exclusion for second-class counties, and hence Allegheny County alone under present circumstances, the fact that only Allegheny County requires its sheriffs to undergo training equivalent to Act 120, notwithstanding that sheriffs of other counties may have such training.

**15.** The plain language of the provision in question merely emphasizes that the Act does not limit any existing authority that lies with a given "law enforcement agency." It does not repose, or allude to, any affirmative authority in sheriffs. Thus, relying on this alone in support of the lower court's ruling is fundamentally circular, as the effective scope of sheriffs' authority in this context is precisely the question we seek to resolve.

From there, the court, citing *Lockridge,* relied on the definition of "law enforcement officer" provided by Pa.R.Crim.P. 103, which defines "law enforcement officer" as "any person who is by law given the power to enforce the law when acting within the scope of that persons employment." The court noted that the Pennsylvania Rules of Criminal Procedure govern law enforcement practice for the seeking and execution of search warrants, *see* Pa.R.Crim.P. 200–211, and ruled that this rendered the case apposite to *Lockridge,* inasmuch as, in that case, we found the sheriffs authority at issue to reside in those rules. Thus, the court held that sheriffs deputies in this case acted within the scope of their authority. Accordingly, the court affirmed, and this appeal followed.[16]

### III.

■ Turning to the instant question concerning sheriffs' authority to investigate and arrest for violations of the Controlled Substances Act,[17] we now have the benefit of our opinion in *Kopko II,* 892 A.2d 766, which was not available to the Superior Court when it decided this case. We agree with Appellant that *Kopko II* controls this case in his favor.

In *Kopko II,* this Court considered the Commonwealth's contention that sheriffs should be permitted to attend a four-day course providing training and certification in the utilization of wiretapping and electronic surveillance pursuant to the Wiretapping Act. The Pennsylvania State Police, tasked by that act with providing the relevant training,[18] had denied the request. The Commissioner of the State Police refused to overturn that decision, and the Commonwealth sought relief in

---

**16.** Then–President Judge Del Sole found the majority's reasoning flawed in its account of the common law. Observing that this Court's decision in *Leet* vindicated only a sheriff's traffic stop of a person who breached the peace in his presence, President Judge Del Sole asserted that *"[i]n this case, the sheriffs were conducting an investigation, thus looking for a breach of the peace, not witnessing one." Dobbins,* 880 A.2d at 696 (Del Sole, P.J., dissenting)(emphasis added).

**17.** Because this presents a question of law, our standard of review is *de novo* and the scope of our review plenary. *Kopko II,* 892 A.2d at 770.

**18.** *See* 18 Pa.C.S. § 5724.

the Commonwealth Court. The Commonwealth Court ruled that sheriffs were not investigative or law enforcement officers for purposes of the Wiretapping Act. Accordingly, the court concluded that sheriffs had not been authorized by the legislature to utilize the methods detailed in the Wiretapping Act. Because sheriffs lacked that authorization, the court agreed with the state police that sheriffs had no entitlement to training in wiretapping methods they were not authorized to utilize. Although the particular entitlement sheriffs sought in that case differs substantially from the investigative authority at issue in this case, our holding in *Kopko II* speaks directly to the question of sheriffs' investigative authority presently at issue, and indeed controls our disposition of the instant case.

Much as the Commonwealth argues and the Superior Court ruled in this case, the Commonwealth in *Kopko II* contended that *Leet* furnished the requisite authority by affirming sheriffs' power to arrest for felonies unless restrained from doing so by statute. We unequivocally rejected this reading, however, emphasizing that, "although the Court in *Leet* and *Kline* recognized the common law authority of deputy sheriffs to make arrests, *it did not discover any legislative authority empowering them to act as police officers.*" *Kopko II*, 892 A.2d at 774 (quoting *Kopko I*, 842 A.2d at 1039)(emphasis added). Rather, we held that no precedent "authorizes sheriffs to investigate or arrest for any of the serious predicate offenses listed in the Wiretapping Act," *id.*, noting that the Wiretapping Act's predicate offenses "involve neither breaches of the peace for which sight arrests may be made nor summary offenses for which citations may issue," *id.*, the specific situations addressed, respectively, by *Leet* and *Lockridge*. We implicitly recognized, however, that the legislature had the prerogative to cloak sheriffs with the authority in question, and indeed were the principal source of that authority. *See* 13 P.S. § 40 ("Constables, county detectives, sheriffs, deputy sheriffs, waterways patrolmen and game protectors shall perform all those duties authorized or imposed on them by statute."); *Kopko II*, 892 A.2d at 772 (quoting 13 P.S. § 40)("The General Assembly has limited the powers and

duties of sheriffs to those 'authorized or imposed upon them by statute.'"); *cf.* 42 Pa.C.S. § 2921 ("The sheriff, either personally or by deputy, shall serve process and execute orders directed to him pursuant to law.").

Thus, we examined whether the Wiretapping Act or another statute authorized sheriffs "to conduct investigations of or to make arrests for the [act's] predicate offenses." *Kopko II*, 892 A.2d at 772 (quoting 18 Pa.C.S. § 5702). We contrasted the essentially ministerial powers recognized by our decisions in *Leet* and *Lockridge* and by 42 Pa.C.S. § 2921 with the serious constitutional intrusions authorized by the Wiretapping Act, noting that a statute in derogation of a constitutional right must be strictly construed. *Id.* (citing *Boettger v. Miklich*, 534 Pa. 581, 633 A.2d 1146 (1993)); *cf. Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378, 1382 (1991) ("Where, in the wisdom of the legislature, such devices may be authorized, as in the [Wiretapping Act], that use will be strictly adhered to and jealously enforced; for the alternative, no privacy at all, is unthinkable."). In light of these concerns, we held that "[u]nless the words of [Wiretapping Act] empower Sheriffs to perform electronic surveillance, this Court would violate the duty to construe the statute strictly were we to enlarge its terms to include Sheriffs." *Kopko II*, 892 A.2d at 772.

Turning to the Wiretapping Act's language, we found in 18 Pa.C.S. § 5708 that communications could be intercepted under the act "by the investigative or law enforcement officers or agency having responsibility for an investigation involving suspected criminal activities when such interception may provide evidence of the commission" of the predicate offenses. *Kopko II*, 892 A.2d at 772. Notably, 18 Pa.C.S. § 5702 listed among the predicate offenses any offense under the Controlled Substance Act. *See id.* at 768–69 (quoting 18 Pa.C.S. § 5708(4)). Observing the sanctity of Pennsylvania's constitutional right to privacy, we emphasized that "[i]f the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that at a minimum, *all* the requirements directed by the Legislature be met." *Id.* at 773 (quoting *Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378, 1382

(1991)). Thus, only if the class of law enforcement officers-in that case sheriffs-"have responsibility for an investigation involving" the predicate offenses may they intercept a communication when it may provide evidence of the violation of, *inter alia,* the Controlled Substance Act. Because no prior law or statute expressly provided such sweeping investigative authority to sheriffs, the Wiretapping Act's failure to do so, given our mandate to strictly construe the act, militated strongly against the Commonwealth's argument.

In an effort to reconcile its position with this decision—which the parties did not have until they briefed this issue before this Court, *see supra* n. 5—the Commonwealth reads our holding in *Kopko II* more narrowly than its express terms allow, and would have us restrict that ruling such that, even if sheriffs are not investigative or law enforcement officers for purposes of the Wiretapping Act, they are law enforcement officers for essentially any other purpose. Thus, the Commonwealth returns to the proposition that *Leet* extends investigative authority to all sheriffs who are trained comparably to municipal police officers that is as broad as the authority granted to those police officers, unless the legislature expressly limits that authority.[19] Citing *Lockridge,* the Commonwealth, like the Superior Court, adds that the authority sheriffs seek also is furnished by the Rules of Criminal Procedure, based on the Rules' supposed grant of search and arrest authority to sheriffs.[20] *See* Pa.R.Crim.P. 200–211 (search warrants), 502–509 (criminal complaints).

**19.** The suggestion that sheriffs, by default, have authority identical to that of municipal police officers is belied by the recent legislative action modifying 18 Pa.C.S. § 103 to add only sheriffs of second-class counties to the definition of police officer. This qualified modification, in the wake of *Leet,* bespeaks at a minimum a legislative intent to distinguish for certain law enforcement purposes not only certain sheriffs from municipal police officers, but also sheriffs of certain counties from sheriffs of others. *See supra* n. 14.

**20.** The Commonwealth argues in the alternative that Appellant has waived any right to relief in this case because he consistently has sought the remedy of dismissal rather than mere suppression of the evidence that is the fruit of the allegedly unauthorized investigation, a point the trial court raised in rejecting Appellant's post-sentence motion. The Commonwealth is correct that suppression is the appropriate

The Commonwealth's argument, however, neglects to account for two critical aspects of our decision in *Kopko II:* first, that we specifically found that sheriffs' lacked authority to investigate violations of the Controlled Substance Act, a predicate offense under the Wiretapping Act; and second, that our holding in *Kopko II* specifically underscored our duty to strictly construe any statute that grants authority to invade individuals' constitutional right to privacy. To read *Kopko II* as narrowly as the Commonwealth urges would require us to focus on the language of our conclusion in that case while disregarding practically everything we wrote in reaching it. Specifically, we observed that no legal authority whatsoever supported treating sheriffs as comparable to police officers. We further emphasized that nothing "authorizes sheriffs to investigate or arrest" for any of the Wiretapping Act's predicate offenses, among which are counted offenses under the Controlled Substance Act, precisely the family of violations that includes those charged in the instant case. Faced with sheriffs' assertion of much more investigative authority than this Court previously had faced, we clarified that *Leet* acknowledged nothing more than sheriffs' circumscribed authority to arrest for breaches of the peace and felonies committed

remedy in a case such as this. *See Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203, 205 (1994)("[T]he unlawfulness of an arrest does not affect the jurisdiction or power of a trial court to proceed in a criminal case, and an illegal arrest or detention does not void a subsequent conviction.... [T]he defendant himself is not a suppressible fruit of an illegal arrest."). *But see Lockridge,* 810 A.2d at 1191 (raising no qualm concerning the fact that the defendant therein sought dismissal of the citation).

Although our law is unequivocal regarding the nearly universally preclusive *effect of a party's failure to preserve issues at each stage of* litigation, *see* Pa.R.A.P. 302(a), the relevant rules are designed to ensure that each court that addresses a case has the opportunity to consider the possibility of its own error or that of a lower court. The Commonwealth does not argue that Appellant has, in any way, failed to preserve his challenge to sheriffs' authority at each stage of this litigation, and the record plainly reveals that Appellant has consistently raised these issues in the appropriate ways at the appropriate times. The trial court was entirely aware of the proper remedy in this case, as it expressly noted in its ruling denying Appellant's post-trial motions, and it couched its pre-trial ruling in substantive rather than formal grounds. Under these circumstances, we find no basis to deem Appellant's argument waived.

in their presence, power *"no different from that of a private citizen."* 892 A.2d at 774 (citing *Commonwealth v. Chermansky,* 430 Pa. 170, 242 A.2d 237 (1968))(emphasis added). Conversely, were we to embrace the Superior Court's reading of *Leet,* we would rule that sheriffs trained comparably to municipal police officers would have authority coextensive with police officers in all areas of law enforcement where the legislature failed expressly to restrict sheriffs' authority, a proposition we expressly rejected in *Kopko II. See* 892 A.2d at 774 (holding that neither the commonlaw authority identified in *Leet* nor the absence of legislative prohibition "empower [sheriffs] to act as police officers"); *id.* at 775 ("[T]he ability of Sheriffs to arrest for felonies committed in their presence is not tantamount to their being 'investigative or law enforcement officers' for purposes of conducting electronic surveillance."); *id.* at 778 ("Sheriffs do not have investigative powers pursuant to 42 Pa.C.S. § 2921," which only authorizes sheriffs to "serve process and execute orders directed to [them] pursuant to law."); *id.* at 780–81 ("Sheriffs have cited to no relevant common law authority empowering them to investigate or arrest for the predicate crimes in the Wiretapping Acts. . . .").

Nor does *Lockridge* govern to the contrary. In that case, we held only that the Pennsylvania Rules of Criminal Procedure reposed authority in sheriffs to seek citations for summary offenses. Just as *Leet* vindicated little more than an arrest authority held by any citizen for felonies and breaches of the peace committed in the sheriff's presence, *Lockridge* plainly applied only to its limited context. This Court's rulemaking prerogatives do not extend to conferring substantial investigatory powers to sheriffs for crimes detailed in statutory provisions that fail to provide such authority. Moreover, any doubt about the breadth of our *Lockridge* decision was dispelled in *Kopko II,* which drew a clear line between sheriffs' authority vis-à-vis summary offenses and with respect to the more invasive actions typically required to investigate violations of the Wiretapping Act's serious predicate offenses.

The facts of this case clearly invoke concerns similar to those this Court expressed in *Kopko II,* insofar as sheriff's

deputies conducted an unwarranted investigation of private property based on suspicion rather than the commission of any felony or breach of the peace in their presence. Relying exclusively upon the observations they made while doing so, they sought, secured, and executed a search warrant, a process that implicates precisely the same privacy concerns that the Wiretapping Act does. Thus, the arrest warrant was predicated on evidence secured only by the execution of a search warrant that never should have issued, inasmuch as sheriff's deputies had no legal authority to obtain that warrant in the first instance. We hold that, absent specific statutory authorization, sheriffs lack authority to conduct independent investigations under the Controlled Substances Act, including the seeking of search warrants where no breach of the peace or felony has occurred in their presence.[21]

Finally, we arrive at the question of remedy. As noted, *supra* n. 20, Appellant has consistently argued that the proper remedy in this circumstance is dismissal of the charges. Appellee and the trial court, however, have observed that the proper remedy where evidence has been discovered by an illegal search and/or incident to an illegal arrest is suppression, not dismissal. We agree. *See Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203, 205 (1994). Thus, the Superior Court's opinion is vacated and the case remanded with direction to the Superior Court to remand to the trial court with direction to suppress all evidence discovered through the sheriff's deputies' illegal investigation, and to conduct further proceedings as necessary.

Former Justice NEWMAN did not participate in the consideration or decision of this case.

Chief Justice CAPPY, Justice CASTILLE and Justice BALDWIN join the opinion.

21. Nothing in this Opinion, however, should be construed to limit sheriffs' well-documented and salutary role in support of those law enforcement agencies so authorized, nor should our ruling be read to suggest that the General Assembly lacks authority to grant broader investigatory power to sheriffs in this or other contexts. Those questions simply are not before us.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR dissents.

Justice EAKIN, dissenting.

Finding no authority to investigate drug cases, the majority deems the acts of these deputies "illegal" *ab initio* and orders suppression. The majority, in my estimation, mistakenly focuses on the scope of employment of a sheriff's deputy, rather than evaluating their actual conduct under the Rules of Criminal Procedure and the Constitution. I find the issue of statutory investigative authority to be a red herring, not determinative of the case; investigative authority does not settle the question of whether deputies should, may, or must investigate drug offenses. To obtain relief, appellant must show there was impropriety in the actions of the officers, some violation of a statute, our Rules, or the Constitution. I do not find he has done so.

If the actions of the sheriff's deputies, to be "legal," required specific authority to enforce drug laws, the majority may be correct. Conversely, if their actions were not made "illegal" by a lack of specific drug law authority, the majority is incorrect. In fact, appellant does not argue specific wrongdoing beyond the alleged lack of authority to get involved with drug offenses. Whatever their relative authority, a *seriatim* look at the events leads me to conclude there simply was no illegality by these officers.

The initial information that led to the search warrant was not the result of an illegal presence at the scene. The officers came to the property of April Harris, not appellant Cory Dobbins, a place where he claims no expectation of privacy on the record before us. Their reason for their presence is irrelevant—constitutional analysis of their actions does not concern itself with their motive, if the actions were not themselves invasive of appellant's privacy or otherwise unconstitutional. As with any case, what is preliminarily relevant is whether the deputies did anything to invade the privacy of this appellant. The answer is, they did not.

It is nonsensical to suggest their presence at Ms. Harris's property somehow gave appellant the ability to complain of what they did or found there, based solely on *why* they were there. The officers committed no entry less "legal" than that of any other citizen coming to her door, regardless of their purpose. Whether they are statutorily authorized to investigate drug matters is irrelevant—as concerns appellant, it does not matter whether they came for a quiet stroll, to distribute religious tracts, or to investigate the Lindbergh kidnapping. They did nothing in seeking Ms. Harris that offends appellant. As such, that which they saw and smelled there, in the air and light accessible to all, and which eventually comprised probable cause for the search warrant, was not learned illegally. To the point appellant chose to take flight, they did nothing improper, unconstitutional, or illegal.

The officers next sought a search warrant. The majority states, "[S]heriff's deputies had no legal authority to obtain that warrant in the first instance." Majority Op., at 89, 934 A.2d at 1181. This is patently wrong, for anyone may request a search warrant under our Rules—one does not *need* special authority to seek a warrant. The "illegality" alleged being in the "who," not the "what," we look to our Rules, which teach us the "who" is the "affiant." "[T]he issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant." Pa.R.Crim.P. 203(C). An "affiant" is clearly defined in Rule 103: "any responsible person capable of taking an oath...." *Id.*, 103. It does not say police officer or law enforcement officer—it says "any person" and makes no mention of authority, be it statutory, investigative, or otherwise.

There is no prohibition in our Rules, or elsewhere for that matter, precluding a deputy sheriff or any other citizen from appearing before an issuing authority as an affiant. Rule 204 specifically requires *execution* of the search warrant be accomplished by law enforcement officers—the ability to *apply* for a warrant, to be an affiant, is not so restricted. Pa. R.Crim.P. 204. Clearly a sheriff's deputy, capable of taking an oath, may be an affiant; to say such an officer "had no

legal authority to obtain that warrant" is manifestly incorrect. *See* Majority Op., at 89, 934 A.2d at 1181.

Finding probable cause in an affidavit by a properly sworn affiant, the magistrate's issuance of the search warrant was not illegal. Its execution by the deputies is authorized by Rule 204. Pa.R.Crim.P. 204. Thus, the fruits of the search were not illegally obtained and were properly held by all courts below to be admissible. There simply is no illegality to this point, for any citizen (authorized to enforce the drug laws or not) may act exactly as did the officers here. That they were in fact law enforcement officers only magnifies the incongruity of calling their conduct "illegal."

The criminal complaint followed the search. Again, the Rules allow deputies and private citizens alike to file a complaint as an "affiant." Rule 506 makes complaints not filed by law enforcement officers (as defined in Rule 103) subject to approval by the District Attorney, reinforcing the fact that an affiant need not be a law enforcement officer.[1] Pa.R.Crim.P. 506(A). Therefore, the complaint was properly and "legally" filed and the warrant properly issued.

Moreover, as no evidence apparently was gained by execution of the arrest warrant, suppression is no remedy even if there had been an illegality. As is no allegation of actual prejudice resulting from the employment of the arresting officers, dismissal is also inappropriate. In sum, the officers acted legally throughout, regardless of specific drug enforcement responsibility.

The majority relies heavily on *Kopko v. Miller*, 586 Pa. 170, 892 A.2d 766 (2006) (*Kopko II* ), which held sheriffs "are not 'investigative or law enforcement officers' pursuant to [the

---

1.  In *Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994), a deputy used a citation to bring summary charges, a procedure not authorized for a non-law enforcement officer-citizens may institute charges, but may not use citations. The case decided that issue, holding sheriffs are law enforcement officers under our Rules for purposes of instituting charges. *Id.,* at 301. There is no reason to find a deputy should be otherwise for purposes of non-citation offenses. Sheriffs and deputies undoubtedly are "law enforcement officers" under our Rules and our jurisprudence.

definitions contained in] the Wiretapping Act, [18 Pa.C.S. § 5708]." *Id.,* at 770. The majority suggests *Kopko II* found "sheriffs' [sic] lacked authority to investigate violations of the Controlled Substance Act, a predicate offense under the Wiretapping Act" and concludes sheriffs could not investigate crimes under the Controlled Substance Act, making their actions here "illegal." Majority Op., at 87, 934 A.2d at 1180. I do not find *Kopko II* says this, nor does it answer the question of the "illegality" of the action here.

*Kopko II* stated, "[T]he sole question before us involves the interpretation of statutory language ... in the Wiretapping Act...." *Kopko II,* at 770. *Kopko II* only concluded sheriffs were not "investigative or law enforcement officers" as uniquely defined in that act and thus could not obtain wiretap training. *Id.* Section 5708 of that act looks to whether an officer has the *responsibility* to investigate a predicate offense—it does not depend on whether officers had the *ability* to do so. 18 Pa.C.S. § 5708. This distinction is significant, for while deputy sheriffs may not be *responsible* for investigating drug offenses, (which excludes them from the list of law enforcement officers eligible for wiretap training), *Kopko II* does not amount to a sweeping *preclusion* of their ability to participate in all law enforcement procedures just because they involve crimes enumerated in § 5708. One has the legal right to participate in many things that one is not responsible for; not being responsible for your brother's keep does not prevent you from helping out now and then on pain of "illegality." In any event, the issue of general authority (rather than specific responsibility) simply was not before the court in *Kopko II.*

These officers made no warrantless search; they made no illegal search. They brought no illegal charges, and made no warrantless or illegal arrest. They acted lawfully throughout, followed our Rules, and obtained the appropriate paperwork after review by judicial officers. Whether they had specific statutory authority to enforce drug laws or not,[2] they did

2. The majority holds "sheriffs lack authority to conduct independent investigations under the Controlled Substances Act, including the seek-

nothing unconstitutional or invasive of the rights of appellant—to find their conduct "illegal" is a decision I cannot join; hence, my respectful dissent.

ing of search warrants where no breach of the peace or felony has occurred in their presence." Majority Op., at 89, 934 A.2d at 1181. The modifying phrase is out of order—"occurred in their presence" actually modifies only "breach of the peace," not "felony." Law enforcement officials have traditionally had authority to arrest without a warrant for felonies, whether committed in their presence or not; authority to warrantlessly arrest for lesser offenses existed only when a breach of the peace was committed in the presence of the officer. *See Leet,* at 303.

Regardless, as these officers saw considerable evidence of a felony drug manufacturing operation, they might have taken action on this recognized basis alone. No court below considered this, since the actions of the deputies were deemed appropriate. As the majority now finds the behavior "illegal" for want of statutory authority, the proper remedy should at most be a remand for consideration of their authority to act on probable cause to believe there was a felony, a point understandably not addressed below, and on which we have received no advocacy or authority.