[J-107-2016] [MO: Saylor, C.J.]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 35 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 2099 MDA 2014 dated |
| | : | September 22, 2015, reconsideration |
| v. | : | denied November 23, 2015, Affirming |
| | : | the Judgment of Sentence of the |
| | : | Dauphin County Court of Common |
| DARRIN ORLANDO MATHIS, | : | Pleas, Criminal Division, at No. CP-22- |
| | : | CR-0000174-2014 dated November 25, |
| Appellant | : | 2014. |
| | : | |
| | : | ARGUED: November 2, 2016 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: November 22, 2017**

I disagree the statutory authority conferred on parole agents includes the ancillary authority to detain and frisk a non-parolee private citizen present during a routine visit to a parolee's home, and accordingly I respectfully dissent.

Our interpretation of statutory provisions is guided by the Statutory Construction Act, 1 Pa.C.S. §§1501-1991, "under which our paramount interpretive task is to give effect to the intent of our General Assembly in enacting the particular legislation under review." *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011), *citing* 1 Pa.C.S. §1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."). The plain language of a statute is generally the best indication of the General Assembly's intent. *Bowser v. Blom*, 807 A.2d 830, 835 (Pa. 2002). As such, "[w]hen the words of a statute are clear and free

from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa.C.S. §1921(b); *see also Dep't of Transp. v. Taylor*, 841 A.2d 108, 111-12 (Pa. 2004) ("As a general rule courts do not have the power to ignore clear and unambiguous statutory language in pursuit of a statute's alleged or perceived purpose.").  Additionally, this Court has recognized expanding the terms of a statute is an act reserved for the General Assembly and should not be accomplished through judicial action.  *See, e.g., Commonwealth v. Kenneth Scott,* 532 A.2d 426, 429 (Pa. 1987) (Court refused to add exceptions to spousal witness incompetency statute even after recognizing legitimate criticisms); *Commonwealth v. Clanton*, 151 A.2d 88, 92 (Pa. 1959) (language of statute "cannot be ignored in pursuit of its spirit even though a broad or liberal construction would obviously protect society").  Accordingly, "although one is admonished to listen attentively to what a statute says[; o]ne must also listen attentively to what it does not say."  *Wright*, 14 A.3d at 814, *quoting Kmonk-Sullivan v. State Farm Mut. Auto, Ins. Co.*, 788 A.2d 955, 962 (Pa. 2001) (internal quotations omitted).

In this case, as the majority recognizes and even the Commonwealth concedes, there is no explicit statutory authority for parole agents to frisk a non-offender like appellant.  *See* Majority Opinion, slip op. at 13, *quoting Commonwealth v. Mathis*, 125 A.3d 780, 785 (Pa. Super. 2015) (Parole Code "does not otherwise reveal legislative intent to 'empower parole agents to act as police officers with respect to non-offenders or private citizens'").  Indeed, the plain language of Sections 6152 and 6153 expressly and unambiguously limits the statutory authority of parole agents to detain and search only the "offenders" under their supervision.  *See* 61 Pa.C.S. §§6152 (conferring parole agents with "police power and authority … to arrest … **any parolee or probationer** under the supervision of the [parole] board") (emphasis added), 6153(b)(1) (conferring parole agents with authority to "search the person and property of **offenders**")

(emphasis added), 6153(d)(1)(i) ("personal search of an **offender** may be conducted by an agent," in pertinent part, "if there is a reasonable suspicion to believe that the **offender** possesses contraband or other evidence of violations of the conditions of supervision") (emphases added).[1]  The majority also recognizes that "ancillary aspects of a parole agents' duty are not expressly referenced in the legislation[.]"  *See* Majority Opinion, slip op. at 15.[2]

Furthermore, relevant precedent undermines the majority's decision to look outside the statutory framework of the Parole Code to infer ancillary authority of parole agents over private citizens.  *See e.g.*, *Commonwealth v. Dobbins*, 934 A.2d 1170 (Pa. 2007); *Kopko v. Miller*, 892 A.2d 766 (Pa. 2006); and *Commonwealth v. Price*, 672 A.2d 280 (Pa. 1996).[3]  In *Dobbins*, for example, this Court considered whether sheriffs'

---

[1] As a comparison, municipal police and the Pennsylvania State Police (PSP) are expressly granted statutory authority to enforce laws as to "**[a]ny offense**," 42 Pa.C.S. §8952(1) (municipal police) (emphasis added), and arrest for "**all violations of the law**." 71 P.S. §252(a) (PSP) (emphasis added).  It is clear from this distinction that the General Assembly could have drafted language giving parole officers broader authority if it chose to do so, but it instead granted parole agents the authority over parolees only.

[2] Additionally, I would reject the Commonwealth's argument Sections 6153(b)(2) ("Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania") and 6153(c) ("No violation of this section shall constitute an independent ground for suppression of evidence in any probation or parole proceeding or criminal proceeding") provide the basis for such ancillary authority.  Subsection (b)(2) clearly applies to further circumscribe the limited nature of the authority granted to parole agents under Section 6153.  Subsection (c) obviously refers to violations of Section 6153, which in turn relates only to the authority of parole agents over parolees, and therefore, any violation must by definition involve parolees.  There is nothing in Section 6153 to demonstrate the General Assembly contemplated extending the powers of parole agents to include authority to frisk private citizens, or otherwise granting the broad authority of police officers generally.

[3] I recognize the force in the Majority's assertion these cases pertain to limitations on criminal investigative powers.  However, each case also supports the general proposition that statutes which diminish and infringe on the right to privacy — such as the Wiretapping and Electronic Surveillance Control Act, the federal statute empowering (continued…)

deputies have the authority under the Controlled Substances Act to conduct independent drug investigations. *Dobbins*, 934 A.2d at 1178. The Court expressly held "sheriffs have only such independent investigatory authority to seek out evidence of wrongdoing that is committed outside their presence as is expressly authorized by statute," and because the Controlled Substances Act did not provide such authority, the Superior Court erroneously determined the deputies "have common[ ]law authority to conduct an independent investigation of a suspected methamphetamine manufactory, obtain a search warrant in furtherance of that investigation, and effectuate arrests for any offenses the investigation reveals." *Id.* at 1171.

In holding the deputies could seek a search warrant only where a breach of the peace or felony occurred within their presence, the *Dobbins* Court relied on our earlier decision in *Kopko*. *Id.* at 1181, *citing Kopko*. In *Kopko*, this Court determined sheriffs are not "investigative or law enforcement officers" pursuant to the Wiretapping and Electronic Surveillance Control Act (Wiretap Act).[4] *Kopko*, 892 A.2d at 767. The Court first recognized the Wiretap Act, which authorizes electronic surveillance under certain circumstances, involves an infringement upon the right to privacy and thus must be strictly construed. *Id.* at 772. The Court further concluded there was no legal support for the proposition sheriffs' deputies have the same powers as police officers. Instead, the Court determined sheriffs' deputies are statutorily authorized only to investigate and

_____

(…continued)
FBI agents, and the Parole Code provisions at issue here — must be strictly construed, and evidence gathered when agents overstep their statutory authority should be suppressed. *See Boettger v. Miklich*, 633 A.2d 1146, 1148 (Pa. 1993) (statute in derogation of right to privacy must be strictly construed).

[4] 18 Pa.C.S. §§5701-5782.

arrest for breaches of the peace and felonies committed in their presence, and such powers are "no different from that of a private citizen." *Id.* at 774.

Similarly in *Price*, this Court considered whether an FBI agent was statutorily authorized to make an arrest for motor vehicle violations: failure to stop at a stop sign and driving under the influence, graded as a misdemeanor. *Price*, 672 A.2d at 281. The Court considered the relevant statute, 18 U.S.C. §3052, which authorizes FBI agents to make warrantless arrests only where there are reasonable grounds to believe a felony is being committed, and determined the agent lacked statutory authority to stop the vehicle and arrest Price under the circumstances presented. *Id.* at 282. As the stop was unlawful, the Court determined the evidence should have been suppressed. *Id.* at 285.

In my view, principles of statutory construction and the foregoing precedent undermine the majority's decision to infer ancillary authority of parole agents over private citizens in a case like this one. As such, the exclusionary rule requires suppression of the evidence obtained as a result of the agents' unauthorized actions. *See, e.g.*, *Commonwealth v. McCandless*, 648 A.2d 309, 311 (Pa. 1994) (even where probable cause exists that crime is being committed, investigating municipal police officer lacked statutory authority to detain defendant because information establishing probable cause was obtained outside officer's territorial jurisdiction, and therefore evidence should be suppressed).[5]  *See also Price*, 672 A.2d at 284-85 (evidence

---

[5] I recognize *McCandless* is factually distinguishable because the parole agents here were not acting outside of their territorial jurisdiction, but within the scope and location of their authority when they encountered appellant. But, in my view, the Parole Code expressly provided them with authority — and thus jurisdiction — over parolees only. As such, they acted outside this jurisdiction when asserting authority over appellant under the facts of this case.

recovered as result of vehicle stop by FBI agent acting outside statutory authority must be suppressed regardless of whether stop was otherwise supported by probable cause). I would hold the evidence recovered as a result of the parole agents' similarly unlawful actions must be suppressed.

I also respectfully dissent from the Majority's additional determination the parole agents here possessed reasonable suspicion to justify a protective frisk. Appellant was seized when the parole agents directed him to pick up his belongings and move to the front room — no reasonable person would have felt free to leave at that point. *See Commonwealth v. Matos*, 672 A.2d 769, 774 (Pa. 1996) (person is seized when totality of circumstances suggest reasonable person would believe he was not free to leave). This is true regardless of appellant's testimony that Agent Welsh asked him "do you mind leaving" and appellant felt he was being rushed, N.T. 7/28/14 at 54, because Agent Welsh ultimately directed appellant to "grab [his] personal belongings and come to the front room." *Id*. at 10. Although appellant could have exited through the back door if he felt "free to leave," he instead complied with Agent Welsh's command.

Police officers — or, in this case, parole agents whom we might view *arguendo* as imbued with the same authority — must have an individualized suspicion of specific criminal activity to justify the seizure of an individual and allow admission of evidence discovered as a result of the seizure. *See, e.g., Commonwealth v. Mistler*, 912 A.2d 1265 (Pa. 2006) (suppression required where group of students were detained by police, questioned, and subjected to breathalyzer testing at fraternity party based solely on their underage status); *Commonwealth v. Wood*, 833 A.2d 740 (Pa. Super. 2003) (suppression required where underage bar patron was detained by police without specific observation defendant consumed, possessed, purchased, or attempted to purchase alcohol). In other words, officers must have reasonable suspicion that each

individual seized was participating in criminal activity. Not only is individualized suspicion required, but this suspicion must be based on current conduct. *Commonwealth v. Melendez*, 676 A.2d 226, 229 (Pa. 1996) ("*Terry* stops, however, are designed to address immediate suspicions of current illegal conduct."). *See also id.* at 229 n.6 ("The *Terry* situation concerns 'necessarily swift action predicated upon the on-the-spot observations of the officer on the beat. ...'"), *quoting Terry v. Ohio*, 392 U.S. 1, 20 (1968).

As in *Mistler* and *Wood*, where suppression was required after police officers detained underage students based only on their age and the general presence of alcohol in the vicinity, I would hold suppression is required here where appellant was detained based only on an ambient odor of marijuana, the presence of smoked marijuana remains, and his nervous behavior, which included checking his cell phone. At no time did the parole agents observe either appellant or their parolee Waters smoking marijuana, and there is no evidence to suggest the agents could discern whether appellant, Waters, both, or neither had smoked marijuana prior to their arrival.[6] Furthermore, appellant specifically complied with all requests from the parole agents. The record does not support a finding there was an individualized suspicion appellant was involved in criminal activity at any point in time and there is even less support for a finding there was current criminal activity by appellant on which to base his initial

---

[6] This is not to say the odor of marijuana or presence of smoked marijuana remains will never rise to the level of reasonable suspicion that criminal activity is afoot. A police officer who smells burnt marijuana while conducting a vehicle stop may have a reasonable suspicion the driver of the vehicle is driving under the influence. However, even if appellant had smoked marijuana prior to the parole agents' arrival, it appears that receiving a haircut while under the influence of marijuana is not considered criminal activity. *But see* 35 P.S. §780-113(a)(31)(i) ("The following acts and the causing thereof within the Commonwealth are hereby prohibited … the possession of a small amount of marihuana only for personal use[.]").

detention. As the subsequent frisk would not have occurred but for the illegal detention, the fruits of that frisk, including the firearm and the marijuana found later, should have been suppressed. *See Commonwealth v. Hernandez*, 935 A.2d 1275, 1283-84 (Pa. 2007) (fruit of poisonous tree doctrine requires exclusion of all evidence obtained as result of constitutional violation), *citing Wong Sun v. United States*, 371 U.S. 471 (1963). I would reverse the Superior Court as to both questions presented for this Court's review.

Justice Donohue joins this dissenting opinion.